**L.H. POPPENHEIMER, on behalf of himself and all others similarly situated, Plaintiff-Appellant,**

v.

**BLUFF CITY MOTOR HOMES, DIVISION OF BLUFF CITY BUICK COMPANY, individually and as a representative of a Class Consisting of General Motors Dealers and General Motors Corporation, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

Feb. 24, 1983.

Application for Permission to Appeal Denied by Supreme Court Aug. 1, 1983.

Alan Bryant Chambers and Mayo L. Coiner, Memphis, for plaintiff-appellant.

Thomas F. Johnston, Prince C. Chambliss, Jr., William A. Carson, II, Memphis, for defendant-appellee General Motors Corp.

Robert A. Lanier, Memphis, for defendant-appellee Bluff City Motor Homes.

CRAWFORD, Judge.

A consumer plaintiff has appealed from the trial court's summary judgment in favor of the seller and the manufacturer of a motor home.

Plaintiff, Poppenheimer, sued the seller, Bluff City Motor Home, Inc., and the manufacturer, General Motors Corporation, alleging breach of express warranty. The trial court disposed of the case on statute of limitations grounds. Consequently, a summary of the pleading history is necessary. The original complaint was filed on March 18, 1977 and alleged that the plaintiff purchased a defective [1] GMC motor home from Bluff City on June 25, 1973. This suit was voluntarily dismissed on March 2, 1978, but on May 2, 1978, he filed a second complaint. The second complaint was also voluntarily dismissed on June 20, 1980. The third complaint, and the one which is now before the court, was filed on June 18, 1981. Defendants moved to dismiss the complaint on statute of limitations grounds, and on September 4, 1982, Poppenheimer responded by amending the complaint to include a claim alleging breach of express warranty. GMC then filed a motion to dismiss or in the alternative for summary judgment to which was attached a warranty identical to the one provided Poppenheimer and the affidavit of an authorized GMC agent. Bluff City filed a motion for summary judgment and attached excerpts from Poppenheimer's deposition as exhibits. The trial court found that the four-year statute of limitations provided by Tenn.Code Ann. § 47–2–725 (1979), began to run on June 25, 1973, when tender of delivery was made and that the instant action was not filed within the original limitations period, nor was it filed within the one-year period allowed by Tenn. Code Ann. § 28–1–105 (1980).

The instrument involved in the controversy is titled "GMC Motor Home New Vehicle Warranty," and the paragraph in dispute is as follows:

GMC MOTOR HOME NEW VEHICLE WARRANTY

What is Warranted and for How Long

GMC truck (GMC Truck & Coach Division, General Motors Corporation) warrants to the owner of each GMC Motor Home (hereinafter called "Motor Home") that for a period of 12 months or 12,000 miles, whichever first occurs, it will repair any defective or malfunctioning part of the Motor Home—except tires and

---

1. Specifically, Poppenheimer's complaint alleged that the motor home was over-weight and that it had an "improper" rear suspension design consisting of defective air bellows and an inadequate air compressor which resulted in excessive tire wear due to the vehicle's inability to ride levelly. The motor home was also alleged to be defective due to generalized "leaks," an inoperable toilet and defective heater, air conditioner, refrigerator, and household battery. Various locks and miscellaneous bearings, bushings and pins were also alleged to be defective.

tubes which are warranted separately by the tire manufacturer. This warranty covers only repairs made necessary due to defects in material or workmanship.

\*     \*     \*     \*     \*     \*

The parties agreed in the trial court that the applicable period of limitations was four years as provided in Tenn.Code Ann. § 47–2–725 (1979), and the one-year period provided for in the saving statute, Tenn.Code Ann. § 28–1–105 (1980). The decision of this court will be made on this premise, although we do not necessarily agree that these statutes are applicable to the particular facts of this case. The parties' reliance on the general saving statute, Tenn.Code Ann. § 28–1–105 (1980), is puzzling, in the first instance, because the U.C.C. contains a saving statute of its own. Tenn.Code Ann. § 47–2–725(3) (1979). More troubling, however, is the parties' agreement that § 47–2–725 applies at all in this action on a *manufacturer's* purported warranty. The U.C.C. applies only to contracts for the sale of goods, Tenn.Code Ann. §§ 47–2–102, 47–2–106 (1979), and it would clearly apply to the sale of a motor home such as the sale of the GMC motor home by Bluff City to Poppenheimer. Despite the blanket statement by our Supreme Court in *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn. 1975), that all warranties involved in the sale of goods would be controlled by § 47–2–725, we are not fully convinced that the court intended to say that a *manufacturer's* agreement to repair or replace defective or malfunctioning parts could not be enforced by the purchaser more than four years after the tender of delivery of the goods by a *dealer* because the warranty would be governed by the U.C.C.'s four-year limitation period. Otherwise, a manufacturer's warranty to repair for five years would be unenforceable after four years from the date of tender of delivery by a dealer. This was the undesirable result in *Shapiro v. Long Island Lighting Co.,* 71 A.D.2d 671, 418 N.Y.S.2d 948, 27 U.C.C.Rep.Serv. (Callaghan) 445 (N.Y.App.Div.1979) (purchaser's action on a 10-year manufacturer's warranty to replace filed 9 years after tender of delivery was barred by the four-year statute of limitations, because the warranty was not one which explicitly extended to future performance).

The statutes referred to are as follows: *Statute of limitations in contracts for sale.*

(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) When an action is commenced within the time limited by subsection (1), but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or when the judgment or decree is rendered in favor of plaintiff, and is arrested or reversed on appeal, the plaintiff or his representatives or privies as the case may be, may, from time to time, commence a new action within one (1) year after the judgment, reversal or arrest.

\*     \*     \*     \*     \*     \*

Tenn.Code Ann. § 47–2–725 (1979).

*New action after adverse decision.*—If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, com-

mence a new action within one (1) year after the reversal or arrest.

Tenn.Code Ann. § 28–1–105 (1980).

■ In reviewing a summary judgment, the court must view all pleadings and affidavits in a light most favorable to the opponent of the motion and all conclusions of fact derived therefrom must be similarly construed. *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 279 (Tenn.Ct.App. 1977); *see Stone v. Hinds,* 541 S.W.2d 598, 600 (Tenn.Ct.App.1976). Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03 (1982).

■ To obtain the protection of the saving statute, the new suit must be filed within one year after termination of an action that was brought within the time limited by the statute of limitations. *Turner v. Nashville, C. and St. L. Railway,* 199 Tenn. 137, 285 S.W.2d 122, 123 (1955). Therefore, the primary question to be answered is when does the statute of limitations begin to run in order to determine whether or not the instant suit was filed within one year after termination of an action that was brought within the four-year period provided by § 47–2–725. Thus, if the four-year statute of limitations begins to run June 25, 1973, as contended by the defendants, the instant case filed on June 18, 1981, was filed more than one year after the dismissal of an action which was filed within the four-year period of limitations and barred under *Turner.*

It is clear that this action was filed within one year of the dismissal of the second action. The determination must be made whether the second action filed May 2, 1978, was filed within the four-year statute of limitations of § 47–2–725.

Poppenheimer contends that the suit is not barred, because he was given a warranty which "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance," and that, therefore, the cause of action accrues only when the breach is or should have been discovered. Under this contention, the statute of limitations begins to run at the end of the 12-month period provided in the warranty when the repairs or replacements have not been made.

Poppenheimer also contends in the alternative that the statute of limitations was tolled by the defendants' promises and attempts to repair which extended well past the 12-month period set out in the warranty.

With the contentions of the parties under these particular statutes we are presented with a case of first impression in this state.

■ The code places heavy emphasis on the date of tender of delivery, and the exception as to when the statute of limitations begins to run is narrowly drawn. In *Mountain Fuel Supply Co. v. Central Engineering and Equipment Co.,* 611 P.2d 863, 29 U.C.C.Rep.Serv. (Callaghan) 817 (Wyo. 1980), the Wyoming Supreme Court touched on the intended scheme of the code in discussing the U.C.C.'s warranty of future performance exception to the statute of limitations. The court observed:

> For purposes of starting the statute of limitations, the U.C.C. states that unless a warranty extends to future performance, a breach of warranty occurs when tender of delivery is made, regardless of the aggrieved party's lack of knowledge of the breach. [Section 47–2–725(2) ] In other words, where a product is warranted generally a buyer will have four years from the date of delivery or any other agreed upon period not less than one year, in which to bring an action on the warranty [§ 47–2–725(1) ] *This suggests rather strongly that the date of delivery has special significance to the warranty question, absent specific agreement to the contrary.*

*Id.* at 868 (emphasis added).

■ It seems clear that in a warranty that a product is free of defects in workmanship and materials the manufacturer is telling the purchaser that the product is in good shape when he takes delivery. Obviously, if there is a defect in workmanship or

materials, whether known or unknown, the breach of the warranty occurs upon tender of delivery to the purchaser. Most of the express warranties concerning defects in workmanship and materials go further and provide a remedy for a limited period of time such as the repair or replacement of the defective part or workmanship. Although the remedy would take effect in the future, it is clear that this is to take care of the breach of the warranty which occurs when a product was delivered with defects in workmanship or materials.

■ In the instant case, the warranty is clear that it covers only defects in workmanship and materials: "This warranty covers only repairs made necessary due to defects in material or workmanship." Thus, this was a warranty that would be breached on tender of delivery, although a remedy is allowed for a limited time after delivery.

■ If the warranty is not one that explicitly extends to future performance of the goods, then the exception in subparagraph 2 simply does not come into play. Thus, the crucial determination to be made is whether the language of the particular warranty involved explicitly extends to future performance of the goods.

■ Clearly, all GMC warranted was that it would repair defective or malfunctioning parts, and numerous cases could be cited to support the proposition that a warranty to repair is not one that explicitly extends to future performance of the goods. *Commissioners of Fire District No. 9 v. American La France*, 176 N.J.Super. 566, 424 A.2d 441, 445, 3 U.C.C.Rep.Serv. (Callaghan) 583 (1980) (and cases cited therein); *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371 (1976) (involving a similar warranty and result). To find that this warranty was covered by § 47–2–725(2) would require an entirely strained and unrealistic interpretation of the phrase "future performance of the goods." Moreover, such a result would also require that we completely ignore the code drafter's command that the warranty be explicit.

■ Poppenheimer cites *Ford Motor Co. v. Gunn*, 123 Ga.App. 550, 181 S.E.2d 694 (1971), as authority for the proposition that a breach of a warranty to repair occurs at the time of a refusal or failure to repair. While the decision in *Gunn* is undoubtedly correct that a warranty to repair is breached when the warrantor refuses or fails to repair defective or malfunctioning parts, this has nothing to do with determining if the warranty is one which explicitly extends to future performance of the goods. The latter determination is controlling due to the wording of § 47–2–725(2). *See Beckmire v. Ristokrat Clay Products Co.*, 36 Ill.App.3d 411, 343 N.E.2d 530, 532 (1976).

■ The code renders the result that the statute of limitations begins to run even before a breach of a warranty is discovered if the warranty does not explicitly extend to future performance of the goods. No other valid reading of the statute is possible. Some courts have stated that these decisions are harsh as a result. *See e.g., Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978), *cert. denied* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). Any harshness is directly attributable to the restrictive language of the code which leaves courts with no alternative but to render a narrow decision.

Poppenheimer's alternative theory that Bluff City's attempts to repair the motor home tolled the statute of limitations is also contrary to imposing authority. *See e.g.,* Annot., 68 A.L.R.3d 1277 (1976) (and cases cited therein). In *Mountain Fuel Supply Co. v. Central Engineering and Equipment Co., supra,* the court observed:

> Appellant's contention on tolling during repairs is not supported by directly relevant authority... This issue really ties into and is intimately related to the concept that the warranty is one of future performance... When the argument as to future performance fails, this contributes significantly to the failure of the argument that the warranty period should be tolled.

*Id.* at 871.

■ In *Binkley v. Teledyne Mid-America*, 333 F.Supp. 1183 (E.D.Mo.1971),

the court refused to engraft an exception upon a specific statute of limitations because such action would be a duty of the legislature. We agree with the reasoning and the result in *Binkley*. *See, Harper v. Holiday Inns, Inc.*, 498 F.Supp. 910, 912 (E.D.Tenn.1978). Clearly, then, whether Bluff City actually attempted to repair the motor home as Poppenheimer alleged has no bearing on the statute of limitations question, and the trial court was correct in granting both defendants' motions for summary judgment because there was no genuine issue as to any material fact in dispute and they were entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03 (1982).

For the reasons above, we affirm the judgment of the trial court and dismiss the case. Costs are adjudged against the appellant.

NEARN, P.J. (W.S.) and TOMLIN, J., concur.