Lincoln C. PASKELL, Plaintiff/Appellant,

v.

NOBILITY HOMES, INC., Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

Feb. 7, 1994.

---

1. T.C.A. § 56–7–1201(d).

D. Scott Hurley and David L. Buuck, Knoxville, for plaintiff/appellant.

G. Wendell Thomas, Jr. and Rex A. Dale, Knoxville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

The determinative issues in this appeal concern the effectiveness of a written extended warranty on the sale and repair of a mobile home, the obligations of the warrantor under the terms of an extended warranty and the properly applicable statute of limitations on such a warranty.

On 26 October 1979, the plaintiff, Lincoln Paskell, purchased a "double-wide" mobile home from Emert's Mobile Home Sales in Knoxville, Tennessee. The home had been manufactured by the defendant, Nobility Homes, Incorporated. The sale of the home included a limited one-year warranty against defects in the materials and workmanship.

Sometime after the purchase of the home and prior to 9 January 1980, two units comprising the double-wide were delivered and set up on the plaintiff's property. The two halves were placed upon a foundation and connected together. At the apex of the cathedral ceiling in the home's living room, at the point where the two halves were joined together, there was a prominent "swag" in the roof. Because of this pronounced "swag," the plaintiff informed the manufacturer in a telephone conversation that he wanted a new roof installed on the home. The plaintiff further threatened to return the home if the roof was not fixed to his satisfaction.

To avoid having Mr. Paskell return the home, Nobility sent a letter, signed by the corporation's general manager, Bruce Stockman, and dated 9 January 1980. The letter stated:

> Let this be formal notice of an extended warranty period on the roof of your Nobility Home. We agree to guarantee your roof and rafter system unconditionally for a five year period from today's date.

Apparently, the mobile home's roof was susceptible to water leakage during inclement weather from the time it had been originally set up on the plaintiff's property. Nobility attempted to repair the defects on at least four (4) occasions, but was never able to remedy the problem. In a letter dated 27 August 1984, Nobility wrote to the plaintiff denying any responsibility for the leak in the roof, stating that the problem was one of "condensation" and not "structural" damage or defect. This letter was also signed by general manager, Bruce Stockman. There was further correspondence between Nobility and Mr. Paskell after August 1984, in which

the plaintiff evidently continued to request satisfaction from the defendant, but to no avail.

On 26 August 1986, the plaintiff filed suit claiming breach of warranty and breach of contract. The trial judge found for the plaintiff and awarded $10,000, to cover the plaintiff's cost of employing an independent roofing contractor to replace all the rafters and re-plywood and re-shingle the roof. The contractor also furnished additional repairs made necessary because of water damage.

Upon the defendant's appeal, the Court of Appeals found that the plaintiff's claim was barred by the four-year statute of limitations under T.C.A. § 47–2–725. *See* 845 S.W.2d 750. We agree that T.C.A. § 47–2–725 is properly applicable to the present case. However, we must disagree with the appeal court's conclusion that the plaintiff's cause is barred by time limitations.

■ Although a mobile home in Tennessee is treated as real property for the purposes of tax assessment, a transaction involving the sale of a mobile home is considered the sale of personal property and is subject to the terms and conditions found in the Uniform Commercial Code. T.C.A. § 47–2–101 *et seq.; also see generally, Bank of Commerce v. Waddell,* 731 S.W.2d 61 (Tenn.App.1986); *and Belle–Aire Villege, Inc. v. Ghorley,* 574 S.W.2d 723 (Tenn.1978). In *Layman v. Keller Ladders, Inc.,* 224 Tenn. 396, 455 S.W.2d 594, 596 (1970), this Court held:

> [W]e are of the opinion that Section 47–2–725 should control in all actions wherein a breach of warranty of a contract of sale is alleged ...

The holding in *Layman,* that limitations on breach of warranty actions are controlled by the terms of 47–2–725, was reaffirmed in *McCroskey v. Bryant Air Conditioning Company,* 524 S.W.2d 487, 491–92 (Tenn. 1975).

> [W]e are content to hold that this statute [47–2–725], as adopted by our legislature, contemplates that actions based on breach of warranty, be brought within four years after a tender of delivery is made, *subject to the exceptions contained therein.* (Emphasis added).

■ In the present case, the plaintiff alleges a breach of warranty involving the sale of tangible personal property. The action is based upon the 9 January 1980 letter modifying the terms of the sales contract by *unconditionally* guaranteeing the mobile home's roof and rafter system for a period of five (5) years. The defendant's January 1980 warranty letter requires no consideration in order to be binding. See T.C.A. § 47–2–209(1).

Unquestionably, T.C.A. § 47–2–725 is the controlling statute of limitations concerning the filing of a case such as this, and provides in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.* (Emphasis added).

■ Under subsection (2), a cause of action accrues when tender of delivery is made, unless the warranty explicitly extends to the future performance of the goods. If the warranty is not one that explicitly extends to future performance of the goods, then the exception in subsection 2 simply does not come into play. Thus, the crucial determination to be made is whether the language of the particular warranty involved explicitly extends to future performance of the goods. *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106 (Tenn.App.1983). In *Poppenheimer,* the Court found that a warranty to merely "repair is not one that explicitly extends to future performance of the goods." *Id.* at 111. However, unlike the warranty discussed in *Poppenheimer,* the defendant's January 1980 letter was not merely a warranty to repair. The terms of the

defendant's warranty *unconditionally* guaranteed the roof and rafter system of the plaintiff's mobile home for a period of five years from the date of the letter. Clearly, such an unconditional warranty extends to future performance of the goods and activates the exception in subsection (2) of 47–2–725.

Since the particular facts of this case activate the exception in T.C.A. § 47–2–725(2), then the determinative query naturally becomes; what constitutes a breach of warranty that would begin the running of the statute of limitations?

■ The defendant argues that the four-year statute of limitations controls in this instance and, even if the defendant's warranty extends to future performance, the action accrued and the limitations began to run when the plaintiff first discovered the defect in the roof, prior to 9 January 1980. Therefore, the plaintiff's action, filed on 26 August 1986, more than six years after discovery of the defect, is barred by the running of the four-year statute of limitations. This argument is to no avail. In an analogous case coming from the State of Colorado the court clearly stated the applicable rule:

> "[In] an explicit warranty contract, . . . the claim accrues and the statute of limitations begins to run, when the plaintiff discovers or should have discovered the defendants refusal or inability to maintain the goods as warranted in the contract." *Smith v. Union Supply Co.*, 675 P.2d 333, 335 (Col. App.1983).

■ By its terms, the defendant's warranty, expressed in its 9 January 1980 letter, explicitly extended to future performance. Under T.C.A. § 47–2–725(2), no breach of the warranty could occur until Nobility refused to honor its obligations and the plaintiff's discovery of the breach. Not until late in the summer of 1984, in the 27 August letter, did the defendant make known its refusal to honor its obligations under the extended warranty. It is on that date that the plaintiff's cause of action accrued and the four-year statute of limitations began to run. Therefore, the plaintiff's claim, filed on 26 August 1986, is not barred by the running of the statute of limitations. The holding of the Court of Appeals is reversed and the judgment of the trial court is reinstated in its entirety. Costs of appeal are taxed against the defendant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHERTY, not participating.