IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 8, 2010 Session

# KRISTENE M. BREWER v. BOYD W. BREWER

**Appeal from the Circuit Court for Franklin County**
**No. 17,278-CV     Buddy D. Perry, Judge**

**No. M2010-00768-COA-R3-CV - Filed February 14, 2011**

Former cohabitant brought this partition action with respect to real and personal property. On appeal, the defendant argues that the trial court erred in dividing the real property and a mobile home, in finding the motor vehicles to be jointly-owned property, and in dividing the proceeds of a savings account equally between the parties. We have concluded that the trial court erred in dividing the savings account, which is titled in the defendant's name alone. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

James C. Thomas, Winchester, Tennessee, for the appellant, Boyd W. Brewer, Sr.

Floyd Don Davis and Norris Arthur Kessler, III, Winchester, Tennessee, for the appellee, Kristene M. Brewer.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Kristene Brewer and Boyd Brewer were married in the early 1980s and divorced in 1987. As part of the 1987 divorce, Mr. Brewer received the marital residence, located at 140 Liberty Road in Winchester, Tennessee; Ms. Brewer executed a deed to Mr. Brewer, and the deed was recorded. Mr. Brewer assumed the remaining indebtedness on the property in the amount of $10,000.00.

The Brewers soon got back together, and they remarried in 1988. Ms. Brewer moved back into the 140 Liberty Road home. The parties divorced again in 1993 but subsequently resumed cohabitating at 140 Liberty Road. The Brewers did not remarry after the 1993 divorce. During their 30-year relationship, Mr. and Ms. Brewer lived together for all but about two or three months; they raised three children and three grandchildren.

The 140 Liberty Road house was destroyed by fire in December 1999. The homeowner's policy paid $63,000, and this money was used to purchase real property located at 79 Liberty Road for $63,000. The deed to the 79 Liberty Road property, recorded at the time of the sale in January 2000, transferred the property to "Boyd W. Brewer, Sr., and wife, Kristene M. Brewer," though the parties were not married at that time.

About six years before the trial in this case, the parties purchased a double-wide mobile home and placed it on the property at 140 Liberty Road. The evidence concerning the personal property at issue will be discussed below.

Ms. Brewer filed a partition action in December 2008. The matter was heard on July 7, 2009, and both parties testified. In an order entered on July 14, 2009, the trial court made findings of fact and conclusions of law and divided the property in dispute. (Pertinent portions of the order will be set out below.) The court denied Mr. Brewer's motion to alter or amend on March 9, 2010, and this appeal followed.

Mr. Brewer argues that the trial court erred in three main respects: (1) when it ordered that any excess contributions made by Mr. Brewer in the purchase of the 79 Liberty Road property were offset by Mr. Brewer's equity in the mobile home; (2) when it found the motor vehicles to be jointly-owned property; and (3) when it divided the proceeds of a savings account equally between the parties.

STANDARD OF REVIEW

This court reviews the findings of fact of the trial court de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed de novo without a presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

ANALYSIS

I. Real estate and mobile home

The trial court ruled that the property at 140 Liberty Road with the mobile home "should . . . be the sole property of Mr. Boyd Brewer Sr." The court determined that the 79 Liberty Road property was jointly owned and should be auctioned off with the proceeds to be equally divided between the parties. The main issue on appeal stems from the court's ruling that "the double wide mobile home and the equity therein on the 140 Liberty Road property off-sets the excess contributions made by Mr. Boyd Brewer Sr. on the [79] Liberty Road property." Mr. Brewer avers that the trial court erred in finding any such offset because the 140 Liberty Road property is his separate property and therefore is not subject to partition.

We begin by examining the relevant factual findings of the trial court:

The 140 Liberty Road, Winchester, Tennessee property was purchased during the first marriage. The house burned and the insurance proceeds were collected and used to purchase the 79 Liberty Road property where the parties resided until the separation occurred in March of 2009.

The parties, after the cohabitation started in 1993, purchased a doublewide mobile home which is located on 140 Liberty Road, Winchester, Tennessee and both parties contributed to the payments of the mortgages on this property.

The 79 Liberty Road property was purchased with insurance proceeds from the fire loss at 140 Liberty Road and there is a material dispute as to who paid for the insurance premiums that generated the insurance policy to purchase this property.

The defendant, Boyd W. Brewer, Sr. in his testimony testified that the insurance proceeds were in his name only and he purchased the 79 Liberty Road property in Winchester, Tennessee. Mr. Brewer Sr. also testified that he purchased the property, took it to the lawyer to get the deed drawn and put his ex-wife, Kristene Brewer on the deed as a gift so that she would have some property to take care of her and the grandchildren.

The parties purchased various amounts of personal property and various amounts of vehicles and motorcycles and 4-wheelers and all of these vehicles

were in Mr. Brewer's name but the testimony is that both parties paid for them. Both parties paid for the maintenance and insurance on them.

Mr. Brewer challenges the trial court's finding that he put Ms. Brewer's name on the deed to 79 Liberty Road as a gift. Mr. Brewer testified that he put Ms. Brewer's name on the deed so that, "[i]n case I died or something, then she could take care of the grandkids." He emphasizes, however, that he later responded in the negative when asked if he decided to make a gift of the property to Ms. Brewer. He stated again that he had the deed drawn with Ms. Brewer's name on it in order to make sure she had a home for their grandchildren.

Because the parties were not actually married, the trial court ruled, and the parties agreed, that Mr. Brewer and Ms. Brewer owned the 79 Liberty Road property as tenants in common. There is generally a presumption that joint tenants have equal interests, but a tenant who pays more than his or her share for the property may seek contribution to compensate him or her. *See Harris v. Taylor*, No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *3 (Tenn. Ct. App. Mar. 28, 2006).

The trial court implicitly concluded that Mr. Brewer made a gift to Ms. Brewer of a one-half interest in the 79 Liberty Road property.[1] In order to establish an interest in property by gift, a party must prove by clear and convincing evidence that the donor intended to make a gift to the donee and that the donor delivered the property to the donee. *Lowry v. Lowry*, 541 S.W.2d 128, 130 (Tenn. 1976); *Harris v. Taylor*, 2006 WL 772007, at *4; *Dunlap v. Dunlap*, 996 S.W.2d 803, 815 (Tenn. Ct. App. 1998). The language of the deed is evidence of an intent to convey ownership, and the recording of the deed is evidence of delivery. *See Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *11 (Tenn. Ct. App. Sept. 14, 2001). Mr. Brewer's testimony also supports the trial court's finding of a gift since his desire to have a place for Ms. Brewer to live with the grandchildren would only be accomplished if Ms. Brewer was entitled to the property (by a right of survivorship) upon his death.

Mr. Brewer relies heavily upon the case of *Harris v. Taylor*, in which the court concluded that the donee did not prove that a gift had been made. *Harris*, 2006 WL 772007, at *5. In that case, the only evidence was the deed and the donee's denial of the donor's assertion that he had not made a gift. *Id.* at *4. In the present case, the testimony of Mr. Brewer concerning his intentions in putting Ms. Brewer's name on the deed supports the court's conclusion. In addition, the 79 Liberty Road property was purchased to replace the

---

[1]In analyzing the applicable caselaw, the court noted that, in this case, "the person requesting the major portion of the equity distribution from the property of these parties is the person who made a gift of this property to the other co-owner."

140 Liberty Road property as the parties' home after the fire, and Mr. Brewer chose to make the ownership of the 79 Liberty Road property joint whereas he alone owned the 140 Liberty Road property. This fact, too, supports an intention to make a gift to Ms. Brewer. On the evidence in this case, we find no error in the court's conclusion that Mr. Brewer made a gift to Ms. Brewer of a one-half interest in the 79 Liberty Road property.

Before reaching the equity offset issue, we must examine the status of the double-wide mobile home placed on the 140 Liberty Road property. As quoted above, the trial court expressly found that "both parties contributed to the payments of the mortgages on this [140 Liberty Road] property." The court also found that both parties paid for the personal property accumulated during their relationship. In its decree, the court ordered that the 140 Liberty Road property and the mobile home "should . . . be the sole property of Mr. Boyd Brewer Sr." Mr. Brewer interprets this language as a ruling that the 140 Liberty Road property and the mobile home were Mr. Brewer's separate property and thus must be awarded to him (since separately owned property is not subject to partition). We disagree with this interpretation.

The classification of the real property at 140 Liberty Road is a distinct issue from the classification of the mobile home, which constitutes personal property.[2] Since the court found that both parties contributed to the mortgages associated with the 140 Liberty Road property and to the personal property amassed by the parties, the court implicitly found that Ms. Brewer contributed to the purchase of the mobile home. This would make the mobile home jointly-owned property, which the trial court then awarded to Mr. Brewer. This interpretation is consistent with the court's language that the mobile home "should" be Mr. Brewer's sole property and with its findings concerning the contributions of the parties to that asset.

We now examine the central issue raised by Mr. Brewer. He argues that the following portion of the court's decree is erroneous: "The Court specifically finds that the double wide mobile home and the equity therein on the 140 Liberty Road property off-sets the excess contributions made by Mr. Boyd Brewer Sr. on the [79] Liberty Road property."

The parties gave sharply conflicting testimony as to their respective contributions to the 79 Liberty Road property. Ms. Brewer testified that she and Mr. Brewer essentially

---

[2]Although for tax purposes the value of a mobile home may, under certain circumstances, be attributed to the underlying land, the sale of a mobile home constitutes a sale of personal property and is subject to the Uniform Commercial Code. *Paskell v. Nobility Homes, Inc.*, 871 S.W.2d 481, 483 (Tenn. 1994); *CMH Homes, Inc. v. McEachron*, No. E2004-02189-COA-R3-CV, 2005 WL 2387153, at *4 (Tenn. Ct. App. Sept. 29, 2005).

pooled their income and paid all of the bills through his bank accounts. Over the years, there were times when Ms. Brewer made more money and other times when Mr. Brewer made more money.[3] Ms. Brewer stated that both parties helped pay for the homeowner's insurance and for a new roof that was put on the house about five years before the trial. Mr. Brewer, by contrast, testified that he paid the $2,650 for the new roof and that Ms. Brewer was mistaken about giving him money to put into his checking account to pay the bills. According to him, Ms. Brewer "has never give me a dime."

The law allows a joint tenant compensation for contributing more than his or her share for improvements to the property that enhance its value, necessary repairs and maintenance, and satisfaction of encumbrances. *Broyles v. Waddel*, 58 Tenn. (11 Heisk.) 32, 42-43 (Tenn. 1872); *Parker v. Lambert*, 206 S.W.3d 1, 5 n.2 (Tenn. Ct. App. 2006). The trial court appears to have credited, at least to some extent, Mr. Brewer's testimony that he made greater contributions to improvements that enhanced the property's value and/or to repairs and maintenance. The court found, however, that Mr. Brewer's excess contributions to the 79 Liberty Road property were offset by the court's award to him of the mobile home and any associated equity, half of which had belonged to Ms. Brewer.

Overall, we find no error in the trial court's ruling regarding the two pieces of real property on Liberty Road and the mobile home.

## II. Vehicles

The trial court was asked to partition three cars, a motorcycle, and three four-wheelers. After concluding that both parties paid for these vehicles and that both parties paid the maintenance and insurance, the trial court ordered that the vehicles be sold and the proceeds divided equally. Mr. Brewer argues that the trial court erred because all three cars and the motorcycle were titled in his name and the proof showed that one of the four-wheelers was paid for and titled to him.

Under well-established Tennessee law, the titling of a vehicle does not conclusively determine ownership. *Rivkin*, 2001 WL 1077952, at *11; *Smith v. Smith*, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983). Rather, "the intention of the parties, not the certificate of title, determines the ownership of an automobile." *Smith*, 650 S.W.2d at 56. Ownership is an issue of fact. *Cunningham v. Dep't of Safety*, No. 01A01-9509-CH-00411, 1997 WL 266851, at *2 (Tenn. Ct. App. May 21, 1997). The trier of fact may consider and weigh the evidence regarding the following:

---

[3]After a work injury, Mr. Brewer was unable to work for over a year.

(1) the circumstances surrounding the vehicle's purchase, (2) the registration of the vehicle, (3) all aspects of insuring the vehicle, (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility of bearing the expense of operating, maintaining, and licensing the vehicle, and (7) the ultimate right to control the vehicle and to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

*Id.* (footnotes omitted); *see also In re Estate of Carter*, No. W2009-01765-COA-R3-CV, 2010 WL 1404419, at *4 (Tenn. Ct. App. Apr. 8, 2010).

In this case, as Mr. Brewer points out, there was a sharp disagreement in the testimony of the parties as to who paid for and maintained the vehicles. It is clear, however, that the trial court credited the testimony of Ms. Brewer over that of Mr. Brewer regarding the vehicles because the court found that both parties paid for and maintained the vehicles. We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). The evidence does not preponderate against the trial court's finding that both parties contributed to the purchase and maintenance of the vehicles. We find no error in the trial court's decision to order the proceeds from the sale of the vehicles to be divided equally.

## III. Savings account

The court did not make any specific factual findings with regard to the savings account in Mr. Brewer's name, but decreed that the money in the account (approximately $6,000) should be divided equally between the parties. We have concluded that the trial court erred in dividing the savings account.

We start with a review of the evidence regarding the savings account at issue, an account at Citizens Community Bank opened on March 6, 2009, by Mr. Brewer in his name alone and into which he deposited money from his other accounts.[4] The testimony of the parties is equivocal. While she initially testified that she contributed to the savings transferred to the account at issue, Ms. Brewer subsequently explained her position that she was entitled to an interest in Mr. Brewer's savings account because it was her income that made it possible for him to save money:

---

[4]The parties did not have any joint bank accounts after their second divorce.

Well, if I didn't work, . . . , Boyd couldn't have saved what he did save. I mean, it took both of us to work, and I feel like I worked just as much as him, but I had my own–well, I didn't contribute to his savings. I did mine.

Ms. Brewer went on to testify that she contributed to her own savings account at SunTrust.

Mr. Brewer testified that he transferred money from his other accounts into the savings account at issue on March 6, 2009, the day after his deposition was taken, because Ms. Brewer still had computer access to his other accounts. He denied that Ms. Brewer ever gave him money.

Ms. Brewer relies on two theories to justify the trial court's division of the savings account: partnership principles and the equitable concept of a resulting trust. The partnership theory is without merit because, under Tennessee law, partnership principles have only been recognized by the courts with respect to business relationships. *See Martin v. Coleman*, 19 S.W.3d 757, 761 (Tenn. 2000); *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991); *Story v. Lanier*, 166 S.W.3d 167, 178 (Tenn. Ct. App. 2004). In *Martin*, a case involving a couple who stayed together for sixteen years after their divorce, our Supreme Court declined to find that an implied partnership (with respect to a business) could extend to retirement benefits accumulated by one partner:

To hold that these retirement benefits are available as partnership assets would require this Court to expand the concept of implied partnership beyond the business relationship now conceded by the parties. In essence, we would be required to hold that unmarried couples may create an implied partnership simply by their continued cohabitation. We decline to do so.

*Martin*, 19 S.W.3d at 761-62. In light of this precedent, the partnership theory fails in this case.

The equitable device of a resulting trust is used by courts to prevent unjust enrichment. *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993). The device allows a court to "reach an interest in property belonging to one person yet titled in and held by another." *Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn. Ct. App. 1996) (quoting *Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977)). The principle underlying a resulting trust is that "a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property." *Smalling,* 943 S.W.2d at 400 (quoting *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)). A resulting trust is generally imposed

"in accordance with the actual or assumed intention of the parties." *Burleson v. McCrary*, 753 S.W.2d 349, 352-53 (Tenn. 1988).

A resulting trust and its terms must be proven by more than a preponderance of the evidence: "clear, cogent, and convincing" evidence. *St. Clair v. Evans*, 857 S.W.2d 49, 51 (Tenn. Ct. App. 1993). While a resulting trust is generally proven by parol evidence, "[o]rdinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by clear, cogent and convincing evidence." *Id.*; *see also Story*, 166 S.W.3d at 184.

In the present case, the trial court did not state that it was imposing a resulting trust, and none of its findings support the existence of such a trust. While some of Ms. Brewer's testimony suggests that she contributed to Mr. Brewer's savings account, she subsequently stated that she felt entitled to part of the account because her income made it possible for him to save and that she had made deposits in her own savings account. Mr. Brewer flatly denied any contribution by Ms. Brewer. Moreover, the testimony of one interested witness–Ms. Brewer–is not sufficient to prove a resulting trust. *See St. Clair*, 857 S.W.2d at 51. We must conclude, therefore, that this theory does not justify the trial court's partition of the savings account.

The trial court erred in dividing Mr. Brewer's savings account, which should be considered his separate property.

CONCLUSION

The trial court's decision is reversed with respect to the savings account but affirmed in all other respects. Costs of the appeal are to be taxed equally to both parties, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE