IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LTL ACRES LIMITED PARTNERSHIP, | § § § | No. 468, 2015 |
| Plaintiff Below-Appellant, | § § | Court Below: Superior Court of the State of Delaware |
| v. | § § § | CA No. S13C-07-025 |
| BUTLER MANUFACTURING COMPANY, a Delaware corporation, and DRYVIT SYSTEMS, INC., a Rhode Island corporation, | § § § § § | |
| Defendants Below-Appellee. | § § | |

Submitted: March 9, 2016
Decided: April 11, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED in part**, **REVERSED in part, and REMANDED**.

Bernard G. Conaway, Esquire, Cohen Seglias Pallas Greenhall & Furman, PC, Wilmington, Delaware, for Appellant.

Paul Cottrell, Esquire, Tighe & Cottrell, P.A., Wilmington, Delaware, Ryan C. Phillips, Esquire (*Argued*), Wright Fulford Moorhead & Brown, P.A., Altamonte Springs, Florida, for Appellee Butler Manufacturing Company.

Somers S. Price, Jr., Esquire (*Argued*), Jesse L. Noa, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, for Appellee Dryvit Systems, Inc.

**VAUGHN**, Justice:

# I. INTRODUCTION

This litigation arises from the construction of a Johnny Janosik furniture store (the "Janosik Building") in Laurel, Delaware. The Plaintiff-Below/Appellant LTL Acres Limited Partnership ("LTL") is the owner of the Janosik Building. Defendant-Below/Appellee Butler Manufacturing Company ("Butler") provided pre-engineered components which were used to build the roof and exterior walls. Defendant-Below/Appellee Dryvit Systems, Inc. ("Dryvit") supplied a product used to protect and seal the Butler walls from the exterior environment. In other words, the Dryvit product was used for the exterior finish. The building was completed in 2006. LTL initiated this action in the Superior Court on July 17, 2013. It alleged breach of warranty, breach of contract, and negligence claims against Butler; and breach of warranty and breach of contract claims against Dryvit.

The Superior Court granted summary judgment to both Butler and Dryvit on the grounds that the actions against both were barred by the applicable statute of limitations. It held that the action against Butler was barred by 10 *Del. C.* § 8127, which is a six year statute of limitations relating to alleged defective construction of an improvement to real property. As discussed below, we have concluded that summary judgment in favor of Butler should be affirmed for the reasons assigned by the Superior Court in its order dated July 30, 2015.

1

The Superior Court ruled that LTL's action against Dryvit was barred by the four year statute of limitations set forth in 6 *Del. C.* § 2-725. That statute provides, in part, that a "breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."[1] Dryvit gave LTL a ten year express warranty. The Superior Court described the warranty as a "repair and replacement warranty" and reasoned that such a warranty cannot be one that extends to future performance. It therefore concluded that the statute of limitations for an action on the warranty expired not later than four years after the Dryvit product was tendered and applied to the building; that is, not later than four years after 2006.

For the reasons which follow, we have concluded that the Dryvit warranty was one explicitly extending to future performance under which discovery of the breach must await the time of such performance. LTL's action accrued, therefore, when the breach was or should have been discovered, not when the product was tendered. Since the Superior Court found that any alleged breach of the Dryvit warranty occurred when the product was tendered, it made no factual findings as to when the breach was or should have been discovered. Therefore, the grant of summary

---

[1] 6 *Del. C.* § 2-725(2).

2

judgment in favor of Dryvit must be reversed and the case remanded for further proceedings.

## II.  FACTS AND PROCEDURAL HISTORY

A. *Facts*

In 2004, LTL hired the Whayland Company, Inc. ("Whayland") as construction manager for the Janosik Building project.  Whayland, an authorized purchaser and installer of Butler building systems, requested that Butler generate a quote for the Janosik Building, which needed to be two stories tall and approximately 180,000 square feet.  Because Butler's building systems were custom tailored to the client's specific needs and location, Whayland also provided Butler with the architectural and design plans.

Butler provided a quote, which was accepted on September 20, 2004, and the building components were delivered between March and August 2005.  Whayland hired Merit Builders to erect the Butler building system.

Once the building was erected, Advanced Wall Systems was hired to apply an exterior insulation and finish system ("EIFS"), which entailed coating the building's exterior with a plastic, stucco-looking cladding manufactured by Dryvit.  The Dryvit cladding came with a ten year limited warranty which, in pertinent part, stated:

3

DRYVIT . . . hereby warrants for a period of ten (10) years from the date of substantial completion of the project that the Exterior Insulation and, Finish System materials manufacture and sold by Dryvit, including the insulation board, adhesive, basecoat, mesh and finish shall be free from defects in the manufacture of the materials and will not, as a result of such defects, when installed in accordance with the current published Dryvit Specifications, within said period of 10 years, under normal weather conditions and excluding unusual air pollution, lose their bond, peel, flake or chip, and further that the finish will be fade resistant, except for specially produced colors, and will be water resistant so long as the surface integrity is retained . . . .

. . .

The sole responsibility and liability of Dryvit under this warranty shall be to provide labor and materials necessary to repair or replace the Dryvit materials described herein shown to be defective during the warranty period, and only for the materials warranted hereunder.[2]

The Janosik Building was completed in September 2006, and the retail store opened in late October 2006. Unfortunately, the building had issues with water infiltration from the beginning. By February 2012, the EIFS cladding began to crack and buckle. The water infiltration and delamination persisted through 2013 despite attempts to remedy the issues.

---

[2] Appellee's Ans. Br. App. at B181-82. Although the warranty includes a choice of law provision stating that Rhode Island law applies, the parties stipulated at oral argument that the same law applies in Delaware. Thus, we decline to address the choice of law issue.

## B. *Procedural History*

As mentioned, LTL filed suit against Butler and Dryvit on July 17, 2013. After conducting discovery, Butler and Dryvit filed motions for summary judgment in early September 2014. Butler argued that LTL's claims were barred under the six year statute of limitations set forth in 10 *Del. C.* § 8127.[3] Dryvit argued that LTL's claims were barred under the four year statute of limitations set forth in 6 *Del. C.* § 2-725,[4] which it contended began to run at the time the materials were delivered.[5]

LTL filed a joint response in March 2015. LTL argued that § 8127 was inapplicable because Butler did not "furnish construction" of the Janosik Building but merely supplied the building materials. Alternatively, LTL argued Butler should be equitably estopped from relying on the six year statute of limitations. As to Dryvit, LTL argued that the Dryvit warranty was one of future performance, and thus, LTL's warranty claim did not accrue until the breach was, or should have been, discovered.[6] Dryvit and Butler filed replies on March 26, 2015.

---

[3] 10 *Del. C.* § 8127(b).

[4] 6 *Del. C.* § 2-725(1) ("An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.").

[5] 6 *Del. C.* § 2-725(2) ("A cause of action accrues when the breach occurs . . . . A breach of warranty occurs when tender of delivery is made . . . .").

[6] 6 *Del. C.* § 2-725(2) ("[W]here a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.").

On July 30, 2015, the Superior Court issued a letter opinion granting both motions for summary judgment.[7] The Court addressed Butler's motion first. It explained that the applicability of 10 *Del. C.* § 8127's six year statute of limitations was determined by whether Butler "furnished construction" of an improvement to real property. Further, the Court explained that to determine if Butler "furnished construction" of an improvement to real property, it had to determine whether Butler's building system was generally available or specially engineered for the Janosik Building. If the building system was generally available, Butler could not avail itself of the six year statute of limitations. Conversely, if the building system was specially engineered, Butler's motion for summary judgment would be granted.

In deciding that Butler had "furnished construction" of an improvement to real property, the Court first discussed Butler's business structure, where an authorized contractor, such as Whayland, orders a metal building system from Butler based on the specific needs of the contractor's client, which included design criteria, design loads, architectural drawings, and local regulations.[8] More specifically, the Court found that Butler had specially engineered and fabricated the following components of the Janosik Building: (1) end and interior frames; (2) structural support materials

---

[7] *See LTL Acres L.P. v. Butler Mfg. Co.*, 2015 WL 4738554, at *1 (Del. Super. July 30, 2015).

[8] This included floor plans, geometric requirements, mechanical specifications, roof top unit information, and roof top unit cut sheets.

to meet the specifics of the project; (3) nuts and bolts to put the system together; (4) an exterior roof; and (5) the Koreteck/R-Steel wall panels. In support of this finding, the Court discussed how Butler would mark each component with a specific number because each component had a specific location and was not interchangeable with another component. Further, the Court discussed Butler's policy on returned systems; that the returned materials are typically scrapped due to the cost of modifying or implementing the materials with another client's system. Based on this, the Court determined that Butler had "furnished construction" pursuant to § 8127.

Next, the Court addressed LTL's contention that Butler could not satisfy the "improvement to real property" portion of § 8127 because another company actually constructed the building. The Court dismissed this argument due to precedent establishing that a defendant's work does not have to be on-site.[9] The Court then dismissed LTL's equitable estoppel contention because Whayland had no authority to speak on Butler's behalf and neither party promised to fix the leaks. Based on these findings, the Court granted summary judgment in favor of Butler.

Next, the Court addressed Dryvit's motion for summary judgment. It held that LTL's claims were barred under 6 *Del. C.* § 2-725's four year limitations period because Dryvit's warranty did not explicitly extend to the future performance of the

---

[9] *See, e.g.*, *City of Dover v. Inter'l Tel. and Tel. Corp.*, 514 A.2d 1086, 1089 (Del. 1986).

7

Dryvit cladding but merely promised to "repair or replace" any defective materials. In support of this conclusion, the Court reasoned that the exclusive remedy under the warranty was to repair or replace defective materials, and thus, the warranty could not be a warranty of future performance. Based on this reasoning, the Court held that LTL's claims against Dryvit accrued at the time of delivery, and because LTL's complaint was filed outside of the four year time period, summary judgment should be granted in LTL's favor. This appeal followed.

## III. DISCUSSION

As mentioned above, we agree with the Superior Court's reasoning in granting summary judgment to Butler and affirm for the reasons assigned by the Superior Court without further analysis.[10] We review the Superior Court's grant of summary judgment in favor of Dryvit *de novo*.[11]

Under Delaware's Uniform Commercial Code, "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued."[12] By agreement, the four year limitation may be reduced to as low as one year, but may not be extended.[13] As mentioned, a "breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future

---

[10] *See LTL Acres L.P.*, 2015 WL 4739554, at *2-4.
[11] *Lank v. Moyed*, 909 A.2d 106, 108 (Del. 2006).
[12] 6 *Del. C.* § 2-725(1).
[13] *Id.*

8

performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."[14]

The only issue before the Court is whether Dryvit's ten year warranty explicitly extends to the future performance of the materials supplied or merely promises to repair or replace defective materials. Although this Court has not determined what constitutes an explicit extension to "future performance" under 6 *Del. C.* § 2-725, many jurisdictions have under their respective versions of the Uniform Commercial Code's statute of limitations. Unfortunately, those interpretations have been less than uniform.

In matters analogous to the case at bar, some jurisdictions have held that when a warranty limits the remedy available to repair or replacement, the warranty cannot be one for future performance.[15] On the other hand, some jurisdictions have determined that a limitation on remedy is not dispositive on the issue of whether a warranty is a promise to repair or replace; or a warranty of future performance.[16]

---

[14] *Id.* § 2-725(2).

[15] *See, e.g.*, *Joswick v. Chesapeake Mobile Homes, Inc.*, 747 A.2d 214, 220 (Md. Ct. Spec. App. 2000) (finding that the limited remedy of repair or replace in a mobile home warranty rendered the warranty one for repair or replacement despite language warranting that the mobile home would be free from defects for a period of twelve months).

[16] *See, e.g.*, *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (finding that language limiting the remedy to repair or replacement of a defective product was not determinative of the warranty's exact nature).

9

We agree with the latter authorities. There is no inconsistency within a warranty where it explicitly extends to future performance but limits the remedy for a breach of warranty to repair or replacement of the defective product. The language of the warranty must be examined to determine if it explicitly, that is, plainly, warrants future performance. To be explicit, the warranty must be unambiguous, and will normally "indicate that the manufacturer is warranting the future performance of the goods for a specified period of time."[17] A provision limiting the remedy to repair or replacement is not dispositive, by itself, in determining whether the warranty extends to future performance.

With these principles in mind, we find that the Dryvit warranty clearly extends to the future performance of the cladding used in constructing the Janosik Building. The Dryvit warranty explicitly states:

> [M]aterials manufactured and sold by Dryvit . . . shall be free from defects in the manufacture of the materials and *will* not, as a result of such defects, . . . within said period of 10 years, . . . lose their bond, peel, flake or chip, and further that the finish *will* be fade resistant, . . . and *will* be water resistant so long as the surface integrity is retained . . . .[18]

---

[17] *R.W. Murray Co.*, 697 F.2d at 823.
[18] Appellee's Ans. Br. App. at B73 (emphasis added).

10

The word "will," as used in the warranty, refers to the future and creates an explicit warranty that the Dryvit materials will perform for the ten year period.[19] We do not mean to imply that the word "will" must be used to make a warranty one extending to future performance, but in this case we need not look beyond the use of the phrases "will not . . . lose their bond," "will be fade resistant," and "will be water resistant" to conclude that this warranty explicitly extends to future performance and that discovery of a breach must await future performance.

Therefore, the Superior Court erred in rejecting LTL's contention that the Dryvit warranty explicitly extended to future performance and finding that any alleged breach occurred when the product was delivered. Any alleged breach occurred when it was or should have been discovered.

---

[19] "Will" is commonly used as an auxiliary verb to denote future tense of a main verb. In the context of the Dryvit warranty, we see no other possible purpose for including this language.

## IV.  CONCLUSION

We affirm the Superior Court's grant of summary judgment to Butler on the basis of the Superior Court's reasoning.  For the foregoing reasons, we reverse the Superior Court's grant of summary judgment in favor of Dryvit and remand the case to the Superior Court for further proceedings consistent with this opinion.

12