SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY

JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

December 16, 2016

Bernard G. Conaway, Esquire
Cohen, Seglias, Pallas, Greenhall
& Furma, PC
Nemours Building
1007 Orange Street, 1130
Wilmington, DE 19801

Somers S. Price, Jr., Esquire
Potter, Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

RE:  *LTL Acres L.P. v. Butler Manufacturing Co., et al.*
     **C.A. No: 13C-07-025 ESB**

Dear Counsel:

This is my decision on Defendant Dryvit Systems, Inc.'s  Motion for Summary Judgment in this case involving the construction of the "Johnny Janosik World of Furniture" building that is owned by Plaintiff LTL Acres Limited Partnership.  The Janosik Building is a uniquely shaped two-story, 180,000-square-foot structure that houses Janosik's retail outlet and management offices.  The retail outlet is on the first floor.  The management offices are on the second floor.  The Janosik Building was constructed using Butler products.  This included the primary steel frames, secondary steel (girts and purlins), the roof system, and the wall cladding.  The Butler wall product that was used is known as the Koreteck/R-Steel System.  The Koreteck panel

system is a one piece, engineered structural insulated wall system. It consists of a steel wall panel surrounded by expanded polystyrene foam. Merit Builders constructed the Janosik Building. Advanced Wall Systems coated the exterior of the Janosik Building with Dryvit. Specifically, Advanced Wall Systems installed a Dryvit base coat, mesh, and finishing coat to Butler's Koreteck wall panels. Dryvit is a plastic, stucco-looking exterior wall coating. Dryvit is somewhat like skin. It was supposed to cover, protect and seal the exterior walls from the environment.

Dryvit provided a 10-year limited material warranty to LTL. Dryvit warranted for a period of 10 years from the date of substantial completion of the Janosik Building that the materials manufactured and sold by Dryvit would (1) be free from defects in the manufacture of such materials, (2) not lose their bond, peel, flake or chip, and (3) be fade and water resistant. The sole responsibility and liability of Dryvit to LTL under the warranty was to provide labor and materials necessary to repair or replace the Dryvit materials shown to be defective during the warranty period. Any other labor or other costs associated with the repairs would be LTL's responsibility and no other charges or expenses would be covered by Dryvit. Dryvit would not have any obligation under the warranty to LTL unless LTL notified Dryvit in writing at a certain address within 30 days of LTL's discovery of the alleged defects. Dryvit also would not have any obligation under the warranty to LTL for

2

damages to the Janosik Building not caused solely and directly by Dryvit's materials. The Janosik Building was finished in October of 2006. It leaked from the very beginning during heavy rains. LTL filed this lawsuit against Dryvit on July 17, 2013. LTL raises warranty claims against Dryvit. I have granted Dryvit's Motion for Summary Judgment, concluding that LTL's claims are time-barred and not covered by Dryvit's warranty.

## STANDARD OF REVIEW

This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[1] Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[2] The Court views the evidence in a light most favorable to the non-moving party.[3] Where the moving party produces an affidavit or other evidence sufficient under *Superior Court Civil Rule 56* in support of its motion and the burden shifts, the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine

---

[1] *Moore v. Sizemore, 405 A.2d 679, 680 (Del. 1979).*

[2] *Id. at 681.*

[3] *Id. at 680.*

3

issue of material fact for trial.[4]   If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of the case, then summary judgment must be granted.[5]   If, however, material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is not appropriate.[6]

## The Statute of Limitations

Dryvit argues that LTL's breach of warranty claims are barred by the four-year statute of limitations set forth in 6 *Del. C.* §2-275.   Dryvit reasons that LTL's cause of action against it accrued no later than December 14, 2008, the date LTL was aware of cracking in the Dryvit finish on the Janosik Building.  However, LTL did not file its lawsuit against Dryvit until July 12, 2013, approximately seven months after the statute of limitations had expired.  LTL argues that its cause of action did not accrue earlier than December 14, 2008, because (1) it did not know that problems with Dryvit's finish were contributing to the water leaks in the Janosik Building until May 15, 2012, and (2) its cause of action did not accrue until Dryvit refused to honor its warranty, a date LTL does not identify.

---

[4] *Super. Ct. Civ. R. 56(e); Celotex Corp. v. Catrett*, *477 U.S. 317, 322-23 (1986).*

[5] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991), *cert. den.*, 112 S.Ct. 1946 (1992); *Celotex Corp.*, 477 U.S. 317 (1986).

[6] *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962).

4

## 6 *Del. C.* §2-725

A cause of action for breach of contract for the sale of goods must be commenced within four years after the cause of action accrues.[7]  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performances of the goods.[8]  In such cases, discovery of the breach must await the time of such performance with the cause of action accruing when the breach is or should have been discovered.[9]  The Dryvit warranty explicitly extends to the future performance of its goods.[10]

## The Meaning of 6 *Del. C.* §2-725(2)

Dryvit argues that LTL's breach of warranty claims accrued when LTL discovered or should have discovered that Dryvit's products were not performing as warranted.  LTL argues that its cause of action did not occur until Dryvit refused to honor its warranty.  The applicable language of Section 2-725(2) focuses on the performance of the goods that have been sold and warranted by the seller.  It does not

---

[7]  2-725(1).

[8]  2-725(2).

[9]  *Id.*

[10]  *LTL Acres Limited Partnership v. Butler Manufacturing Company and Dryvit Systems, Inc.,* 136 A.3d 682 (Del. 2016).

focus on when the seller honors or refuses to honor its warranty. Thus, I have concluded that Dryvit's interpretation of §2-725(2) is correct. My conclusion is consistent with how the Delaware Supreme Court interpreted this section in this case and it is how other Delaware Courts have interpreted it as well.[11]

<u>Time of Discovery</u>

Dryvit argues that LTL knew that there were cracks in the Dryvit finish no later than December 14, 2008. Dryvit's argument is based on e-mails sent by Robert Wheatley, the president of The Whayland Company, LTL's agent and construction manager for the Janosik Building, to Butler employees. LTL argues that it did not know that problems with the Dryvit finish were contributing to water leaks in the building until May 15, 2012. LTL's argument is based on a report prepared on that date by Wiss Janney, its construction expert. The critical point in timing under this analysis is when the plaintiff should have known of the defects which serve as the basis of the breach of warranty claim, not when the plaintiff can pinpoint the exact cause.[12]

LTL argues that it was understood that water infiltration into the Janosik

---

[11] *LTL Acres Ltd. P'ship,* 136 A.3d at 688; *Burrows v. Masten Lumber and Supply Co.,* 1986 WL 13111, at *2-3 (Del. Super., Oct. 14, 1988); *Murray v. American Suzuki Motor Corp.,* 2010 WL 323506 (Del. Super., Jan. 25, 2010).

[12] *Burrows,* 1986 WL 13111.

Building was limited to the area surrounding the intersection of the first and second floors until May 15, 2012. LTL argues that it was not until May 15, 2012 that its expert, Wiss Janney, figured out the source of the water infiltration into the Janosik Building involved cracks in the Dryvit finish.

Dryvit argues that is not the case. Instead, according to Dryvit, the undisputed record demonstrates that as early as September 25, 2008, LTL – through its Construction Manager, Bob Wheatley of The Whayland Company – advised Melissa Stewart of Butler of cracking in the Dryvit finish by e-mail as follows:

> Johnny Janosik Furniture has had an intermittent wall leaking problem on the south Koreteck wall of the second floor almost since it was first erected by Merit Builders. It leaks during wind driven rain. The windows have been tested, Merit has been back to inspect flashings, etc. The Dryvit finish appears to be cracking when the wall deflects in the wind (we're talking typical thunderstorm conditions, not Katrina) as we have resealed cracks several times. We did consider that it might be "micro-fractures" expanding and contracting with heating and cooling, but the pattern is not consistent with the temperature. It does appear to be consistent with the wind. It is getting another workout as I write. It appears that the wall may be deflecting more than it should. The Owner's patience is wearing very thin. What is the process for addressing this problems?

Thereafter, on December 14, 2008, Dryvit points out that Mr. Wheatley of Whayland expressly referenced Dryvit's application problems and litigation as an option for LTL in an e-mail to Todd Weiant of Butler as follows:

> I appreciate the fact that you feel your girt design is sufficient,

7

however, that it based on engineering assumptions that may not be proving out in the field. If that is the case, maybe your assumptions were based on info provided by Koreteck...Or maybe it's a Koreteck fab or installation issue...Or maybe it's a Dryvit application problem...I've been doing this for 30 years and there [sic] one thing I can pretty much guarantee you – whomever is not there will be blamed by the others. So far the Owner has been very patient over the last two years, but there is one more thing I can assure you – this is the stuff lawsuits are made of and if we don't solve it among ourselves, a judge will be doing it for us.

I agree with Dryvit that LTL discovered or should have discovered by no later than December 14, 2008, that the Dryvit products were not performing as warranted. It is clear from Mr. Wheatley's e-mails that the Janosik Building was leaking where the Butler walls were deflecting and the Dryvit finish was cracking. Thus, the leaking was not, as LTL argues, limited to the intersection of the first and second floors. Indeed, the leaking was much broader and involved areas where the Butler walls were deflecting and the Dryvit finish was cracking. LTL had four years to investigate the matter further and file suit. Unfortunately, LTL did not do that in time. Thus, I have concluded that LTL's breach of warranty claims are barred by the statute of limitations and have granted Dryvit's motion for summary judgment on that argument.

### Tolling the Statute of Limitations

LTL raised five arguments in its second amended complaint as to why the

8

statute of limitations should be tolled.[13]   Dryvit addressed these arguments in its opening brief in support of its motion for summary judgment.  LTL did not respond to Dryvit's arguments in its answering brief, stating that it was abandoning the arguments without prejudice to re-assert them later if subsequent discovery warranted.  Dryvit argues that LTL can not do that, noting that Superior Court Civil Rule 56(f) requires a party who is arguing that a motion for summary judgment is premature must show by affidavit that knowledge of the facts necessary to support its opposition is outside its control and must describe the unsuccessful efforts it has made trying to obtain those facts.[14]   LTL did not comply with those requirements. Thus, I have granted LTL's motion for summary judgment on LTL's five tolling arguments.

<u>Dryvit's Warranty Provisions</u>

Dryvit argues that it has no obligations under its warranty to LTL because (1) LTL did not give the 30-day notice required by the warranty, and (2) Dryvit's finish was not the sole and direct cause of the Janosik Building's water leaks.  LTL argues that (1) it did not get a copy of the warranty prior to April 2010, (2) the 30-day notice

---

[13] They are the tolling doctrines of inherently unknowable, waiver, estoppel, fraudulent concealment and continuing breach.

[14] *Stinnes Interoil, Inc., v. Petrokey Corp.*, 1983 WL 21114, at *3 (Del. Super. Oct. 4, 1983).

provision is unreasonable and was not agreed to by LTL and that reasonable notice is sufficient, (3) the Wiss Janney report does not conclude that the delamination of Butler's EPS damaged Dryvit's product, and (4) Dryvit's warranty fails its essential promise, making LTL able to pursue monetary damages.

The Dryvit Notice Provision

The Dryvit warranty has the following notice provision:

> Dryvit shall not have any obligations under this warranty unless the owner notifies Dryvit Systems, Inc.; One Energy Way, P.O. Box 1014; West Warwick, RI 02893; ATTEN: Warranty Services; in writing, within thirty (30) days of the alleged defects. Dryvit shall be allowed a reasonable period of time, authorization to remove samples, and to perform any testing Dryvit deems necessary to investigate and determine the cause of the defect. The Owner shall provide and cause any temporary repairs to be accomplished in a timely manner to prevent further damage to the structure or contents of the building until the cause of the defect is determined and permanent repair recommendations may be made.

First, LTL argues that it did not receive the warranty until April 2010. This date is based on a letter post-marked April 1, 2010, that Dryvit sent to Advanced Wall Systems. LTL's argument is, as Dryvit correctly notes, contradicted by LTL's allegations in its second amended complaint. Twice in its second amended complaint LTL references receiving the Dryvit warranty at the time of purchase of Dryvit's products. Paragraph 20 provides:

> At the time of purchase, Dryvit expressly guaranteed that the

Outsulation Plus cladding system will not "Lose [its] bond, peel, flake, or chip, and further that the finish will be fade resistant, except for specially-produced colors, and will be water resistant so long as the surface integrity is retained" for a period of ten (10) years from the substantial completion of the project. (Attached hereto as Exhibit G is a true and correct copy of the warranty Dryvit provided to Johnny Janosik at the time of purchase.)

Paragraph 47 provides:

As a result of the defective Outsulation Plus, which fails to measure up to Dryvit's future performance guarantee made at the time of purchase, Johnny Janosik has suffered, and continues to suffer, damages as a result of the water infiltration, and is entitled to compensation from Dryvit.

Dryvit is correct. LTL alleged repeatedly in its own second amended complaint that it had received Dryvit's warranty at the time of the purchase of the Dryvit products. Thus, I will hold LTL to its own allegations and conclude that LTL did, as it alleges, receive the Dryvit warranty at the time of purchase.

Second, LTL argues that the notice provision is unreasonable and was not agreed to by it and that reasonable notice is sufficient. The notice provision in the warranty gives Dryvit the opportunity to conduct an investigation into a warranty claim soon after a defect is discovered so that the problem can be dealt with before it gets worse. Indeed, the Dryvit warranty required LTL to make temporary repairs to the Janosik Building in a timely manner so that further damage to the Janosik Building could be avoided while the matter is being investigated. Notwithstanding

11

this, LTL argues that the 30-day notice provision in unreasonable, but does not, as Dryvit points out, say why it is unreasonable. Short notice provisions in warranties have been routinely upheld.[15] I see no reason not to do so in this case. I note that LTL also never provided notice to Dryvit of its warranty claims, not even after receiving the Wiss Janney report. LTL argues that it did not agree to the 30-day notice provision. There is no merit to this argument. Dryvit did not modify the warranty post-contract to change its terms. There is only one warranty and it was the warranty that Advanced Walls Systems got when it purchased the Dryvit products and which covers LTL's building and forms the basis of LTL's claims. There never was any other warranty. Moreover, as Dryvit points out, LTL can not pick and choose the warranty provisions it likes and ignore the others.[16] LTL also argues that the warranty improperly shortens the statute of limitations. That is not correct. The statute of

---

[15] *Davis v. Louisiana-Pacific Corp.*, 2008 WL 2030495 (Cal. Ct. App. 2008); *Solaris Materials, Inc., v. Globe Speciality Metals, Inc.,* 2011 WL 1210203, (S.D.N.Y. Mar. 25, 2011); *Valspar Refinish, Inc., v. Gaylord's, Inc.,* 764 N.W.2d 359, 365 (Minn. 2009).

[16] *See Russell v. Universal Homes, Inc.*, 1993 WL 81272, at *2-3 (Del. Super. Mar. 4, 1993); *See Commercial Union Ins. Co., v. S&L Contractors, Inc.*, 2002 WL 31999352 (Del. Com. Pl. Nov. 8, 2002); *see also Angel v. Goodman* Mfg. Co., L.P., 617 F.Supp.2d 1120, 1128(N.D. Okla. 2008), *aff'd*. 330 F.App'x 750 (10th Cir. 2009)(upholding written notice requirements in express warranties and requiring compliance with the terms of the warranty); *see also Cornell Glascow, LLC, v. LaGrange Properties*, LLC, 2012 WL 6840625, at *13 (Del. Super. Dec. 12, 2012)("Courts in our State and beyond have recognized that contractual notice and cure provisions cannot be ignored no matter how urgently parties may seek to do so when prosecuting breach claims in litigation.").

limitations remained the same. The notice provision was merely a pre-condition that LTL had to satisfy in order to benefit from the warranty. Thus, I conclude that LTL's failure to comply with the notice provision bars its claims against Dryvit.

Damage to Dryvit's Products

Dryvit's warranty contains the following provision regarding damage to its products:

> Further, no warranty whatsoever is made for damage caused in whole or in part by acts of God or natural phenomenon, such as but not limited to falling objects, fire, earthquake, floods, pests, chemical fumes in the atmosphere; nor architecture, engineering, insufficient or defective waterproofing between Dryvit materials, or between Dryvit materials and non-Dryvit materials, nor defective or improper workmanship by the applicator, aesthetics, nor other damage or injury not solely and directly caused by defects in Dryvit's materials as covered under this warranty.

Dryvit argues that LTL sued Butler and Dryvit and placed much of the blame for the Janosik Building leaking on Butler. This is reflected in the following statement from the Wiss Janney report:

> The design and construction of the EPS/Steel composite panel relies on the connection of the front portion and rear portion of the EPS foam to be connected through the round holes in the vertical faces of the steel plate. Observations within the probe openings at the locations of panel delamination reveal that the EPS foam [furnished by Butler] may have been dimensionally unstable for a period of time after initial fabrication. The visual cues regarding movement of the EPS foam (upward movement at the bottom of the panel and downward movement at the top of the panel) described above indicate that the EPS may have shrunk about its central horizontal axis. This uncontrolled and unanticipated shrinkage has caused the

connection of the interior and exterior portions of the EPS foam to be fractured at the plane of the steel plate. Because there is no bond of the EPS foam to the steel plate, the interior and exterior surfaces have become detached from one another leaving each in an unstable state, supported only by the continuous reinforcing mesh that spans the delaminated area to the still-sound (attached) area on the exterior and/or the interior furring for gypsum wall board finishes on the interior.
.......................

Because the panels are not necessarily acting in a structural capacity, this defect does not represent a structural deficiency per se, but it does significantly compromise the integrity of the cladding by way of poor planar stability, unreliable waterproofing performance, and increased maintenance and repair cycle.

.......................

Our observations of the underlying conditions and our experience with projects of similar nature indicate that the predominant likely source of the water infiltration is through the penetrations in the exterior cladding such as the poorly sealed and un-flashed window and door penetrations. While the design intent of the exterior cladding is that the finished system acts as a "barrier system", i.e. preventing any and all water from penetrating the surface, it is clear that the exterior cladding is not performing in this manner. The existing sealant installation at the penetrations has not been adequate to maintain the waterproof integrity of the joint as necessary to constitute a true barrier system. <u>Although not likely a major contributor</u>, localized cracks in the exterior EIFS lamina also provide an opportunity for additional water infiltration into the cladding system.

In short, the Butler EPS foam panels that the Dryvit was applied to had become detached from the steel plates, allowing them to shrink and move, which resulted in the exterior cladding system not performing as a "barrier system" preventing water infiltration. The report noted that the predominant likely source of the water infiltration is through penetration in the exterior cladding such as the poorly sealed

14

and unflashed window and door penetrations. The report goes on to note that "[a]lthough not likely a major contributor, localized cracks in the exterior EIFS lamina also provide an additional water infiltration into the cladding system."

In any event, LTL does not place blame solely with Dryvit for the water leaking into the Janosik Building. Indeed, LTL's own expert lays most of the blame on Butler. Thus, I conclude that since the Dryvit products were not the sole and direct cause of the water leaking into the Janosik Building that LTL has no claim against Dryvit under the Dryvit warranty.

The Dryvit Warranty Remedy

LTL is seeking monetary damages for LTL's alleged breach of warranty. Dryvit argues that its sole obligation under the warranty is the repair or replacement of goods. The Dryvit warranty provides the following remedy:

> The sole responsibility and liability of Dryvit under this warranty shall be to provide labor and materials necessary to repair or replace the Dryvit materials described herein shown to be defective during the warranty period, and only for the materials warranted hereunder. Any other labor or other costs associated with the repairs shall be the sole responsibility of the owner. No other charges or expenses will be allowed by Dryvit.

Dryvit notes that parties are routinely permitted to limit remedies for a breach

of contract.[17]   LTL argues that Dryvit's warranty fails of its essential purpose and that monetary damages can be awarded.  However, all of the cases that LTL relies upon involved a single product that the manufacturer was not able to fix.[18]  This case is very different.  The Dryvit products were applied to a surface material prepared by Butler that was failing and, according to LTL's allegation in the second amended complaint, damaging Dryvit's products.[19]  Lastly, and most importantly, LTL has never explained why Dryvit's warranty is inadequate.  Thus, I conclude that Dryvit's repair and replace remedy does not fail its essential purpose.  Thus, LTL may not pursue monetary damages against Dryvit.

---

[17]  *United States of America v. Angelini*, 2000 WL 1728287, at *4 (D. Del. Mar. 27, 2000); *Parking Co., L.P., v. Rhode Island Airport Corp.*, 2005 WL 419827, at *8 (R.I. Super. Feb. 18, 2005); *Wilson Trading Corp., v. David Ferguson, Limited*, 244 N.E.2d 685, 687 (N.Y. 1968).

[18]  *Norman Gershman's Things To Wear, Inc., v. Mercedes-Benz of North America, Inc.*, 558 A.2d 1066, 1070-1071(Del. Super. 1989); *Beal v. General Motors Corp.*, 354 F.Supp. 423, 425 (D. Del. 1973); *Middletown Concrete Products, Inc., v. Black-Clawson Co.*, 802 F.Supp. 1135, 1150 (D. Del. 1992).

[19]  Paragraph 14 of the Second Amended Complaint alleges that "[b]ecause the EPS came loose and unattached from the core steel, the EPS was able to move.  In so moving Dryvit products were damaged."

## Conclusion

Dryvit's System, Inc.'s Motion for Summary Judgment is granted.

IT IS SO ORDERED.

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
cc:     Prothonotary