765 A.2d 90

**Charles JOSWICK, et ux.,**

v.

**CHESAPEAKE MOBILE HOMES, INC., et al.**

**No. 35, Sept. Term, 2000.**

Court of Appeals of Maryland.

Jan. 8, 2001.

262

Charles J. Brown, Newark, DE, for petitioners.

Amy Leete Leone (Robert B. Hetherington of McCarthy, Wilson & Ethridge, on brief), Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

The issue before us is whether an action filed by petitioners in 1997 for breach of an express warranty that accompanied their purchase of a mobile home in 1988 is barred by the statute of limitations set forth in the Maryland Uniform Commercial Code (Maryland Code, § 2–725 of the Commercial Law Article). The Circuit Court for Harford County and the Court of Special Appeals, for different reasons, held that the action was barred. We agree with the reasoning of the Circuit Court and, on that basis, shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

Petitioners purchased the mobile home in March, 1988, from Chesapeake Mobile Homes, Inc. In February, 1995, they noticed, for the first time, that the roof was and had been leaking, due, apparently, to the fact that the shingles at the eaves had been improperly installed and did not sufficiently overhang in order to allow rain water to drip off the roof. That, according to their experts, caused water to back into the facia area and rot out facia boards and plywood. Correction of the problem would cost $4,275. It is undisputed that the

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

alleged defect was present when the mobile home was delivered to petitioners in 1988.

The mobile home was sold with an express limited warranty by the manufacturer, Brigadier Homes of North Carolina, Inc. (Brigadier). In relevant part, Brigadier warranted the mobile home "when purchased new, to be free from substantial defects of material and workmanship under normal use and service for a period of twelve (12) months from the date of delivery to the first retail purchaser." The warranty expressly stated, however, that "[t]he exclusive remedy for any such defect is the Manufacturer's obligation to repair or replace, at its option without cost to the purchaser . . . at the site of the mobile home, any defective part or parts within the scope of this limited warranty, provided that written notice of the defect is received from the purchaser . . . by the Manufacturer or dealer . . . within one (1) year and ten (10) days from the date of delivery to the first retail purchaser." The warranty was stated to be in lieu of all other express and implied warranties and provided that the manufacturer assumed no responsibility for any consequential or incidental damages incurred as a result of any defect in the mobile home.

In June, 1997, petitioners filed suit in the District Court against Brigadier, Chesapeake, and Sterling Bank and Trust Co., which financed the purchase of the home, for breach of the warranty. The suit sought not only the $4,275 cost of repair but also $15,681 for damage to the interior of the mobile home allegedly caused by the leakage from the roof.[1]

---

1. The validity of the two provisions that would exclude consequential damages is not before us. The warranty stated, in that regard, that "some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you." Section 2–714(3) of the Maryland U.C.C., dealing with a buyer's damages for breach in regard to accepted goods, states that "[i]n a proper case any incidental and consequential damages under the next section may also be recovered." Section 2–715 defines consequential damages resulting from a seller's breach to include "[i]njury to person or property proximately resulting from any breach of warranty." Section 2–719(3), however, provides that "consequential damages may be limited or excluded unless the limitation or exclusion is unconscio-

Upon Brigadier's demand for jury trial, the case was transferred to the Circuit Court for Harford County which, after some discovery and in three separate orders, entered summary judgment in favor of the three defendants on the ground that the action was barred by limitations. Petitioners appealed all three judgments to the Court of Special Appeals but later dismissed their appeals with respect to Chesapeake and Sterling, leaving Brigadier as the only defendant. The Court of Special Appeals affirmed. *Joswick v. Chesapeake Mobile Homes, Inc.*, 130 Md.App. 493, 747 A.2d 214 (2000).

### DISCUSSION

▇ Mobile homes are considered to be "goods" under the Maryland Uniform Commercial Code (U.C.C.). *See Lewis v. Hughes*, 276 Md. 247, 346 A.2d 231 (1975); *Ritz-Craft Corp. v. Stanford Management Group*, 800 F.Supp. 1312 (D.Md.1992); *also Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106 (Tenn.App.1983); *Hull v. Moore's Mobile Homes Stebra, Inc.*, 214 A.D.2d 923, 625 N.Y.S.2d 710 (1995).[2] Accordingly,

---

nable." The section goes on to state that a limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable "but limitation of damages where the loss is commercial is not." *See McCarty v. E.J. Korvette, Inc.*, 28 Md.App. 421, 347 A.2d 253 (1975) (exclusion of consequential damages for personal injury and property damage in warranty accompanying sale of automobile tires unconscionable, though not prima facie so). See also § 2–316.1(3), which provides that "[a]ny oral or written language used by a manufacturer of consumer goods, which attempts to limit or modify a consumer's remedies for breach of the manufacturer's express warranties, is unenforceable, unless the manufacturer provides reasonable and expeditious means of performing the warranty obligations." If the contractual exclusion of consequential damages is valid and enforceable, petitioners would presumably be precluded from recovering the $15,681 they sought for damage to the interior of the home. Because the action was dismissed on limitations grounds, that issue was not addressed by either the Circuit Court or the Court of Special Appeals.

2. Section 2–105(1) of the Commercial Law Article defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8) and things in action." As in *Lewis*, neither party disputes that the

the sale of such a home is governed by the Maryland U.C.C., which, in § 2–725, contains its own statute of limitations governing actions for breach of contract and warranty.[3] Subsections (1) and (2) of that section, which are the ones relevant to this dispute, provide as follows:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.*"

(Emphasis added).

As is evident from a reading of the two provisions, the general rule is that a breach of warranty occurs when tender of delivery is made, and an action for breach of that warranty must be filed within four years after that event, even if the buyer is unaware of the breach. If the warranty explicitly extends to future performance of the goods, however, and discovery of the breach must await the time of that performance, the cause of action accrues not upon tender of delivery

---

mobile home sold to petitioners constitutes "goods" and that the sale is thus governed by the U.C.C.

**3.** This was an important innovation. The Official Comment to § 2–725 makes clear that the purpose was to "take[ ] sales contracts out of the general laws limiting the time for commencing contractual actions" and create a uniform statute of limitations for sales contracts. The objective was to provide relief to persons doing business on a national scale, whose contracts had been governed by different periods of limitation depending on the State in which the transaction occurred. The four-year period was selected "as the most appropriate to modern business practice," being "within the normal commercial record keeping period."

but when the breach is or should have been discovered, and the buyer has four years after that time within which to file suit. The threshold question in this case is whether the warranty by Brigadier "explicitly extends to future performance" of the mobile home and discovery of any breach must await the time of that performance. If not, the breach occurred in March, 1988, when the mobile home was delivered to petitioners, and their lawsuit, filed nine years later, is barred. If so, there is the additional question of whether the discovery rule is limited by the one-year period of the warranty.

The Circuit Court construed the warranty language as "naming a twelve month period in which the buyer can expect the product to be free from substantial defects" and found from that that the warranty *did* extend to future performance and that the breach therefore occurred when petitioners discovered or should have discovered the defect. It concluded, however, that, as the warranty period was twelve months, the extended period of limitations was applicable only to the extent that the defect was discovered within that twelve-month period. In effect, it construed § 2–725(2), in light of the warranty period, as requiring an action to be brought within four years after expiration of the twelve-month warranty—a total of five years after delivery. The summary judgment for Brigadier stemmed from the undisputed fact that the action was not filed within that five-year period. The Court of Special Appeals, as noted, affirmed, but on a different basis. That court seemed to accept that there was a warranty that the mobile home was to be free of substantial defects for twelve months but determined that Brigadier's only commitment with respect to that warranty was its promise to repair or replace any defective parts. Accordingly, it concluded that "because the only remedy available to [petitioners] was repair and replacement, the warranty was a promise to cure defects, and not an 'explicit reference to future performance.'" *Joswick v. Chesapeake Mobile Homes, Inc., supra,* 130 Md.App. at 504, 747 A.2d at 220.

There have been dozens—perhaps hundreds—of cases throughout the country construing § 2–725(2) with respect to whether a warranty, limited or not limited by a promise to repair or replace, constitutes a warranty explicitly extending to future performance and thus invokes the discovery rule set forth in that subsection. The language of the warranty under consideration often differs from case to case, which may explain some of the variations in result, but a number of the cases do go in different directions and cannot easily be reconciled.

One thing that does seem clear is that a commitment to repair or replace defective parts (1) is not, itself, a warranty explicitly extending to future performance, and (2) does not serve either to convert a separate warranty that does not otherwise explicitly extend to future performance into one that does so or, conversely, convert a warranty that *does* extend to future performance into one that does not do so.[4] The predominance of this view in the case law has led one learned commentator to make the flat statement that "[a] warranty to repair or replace is not a warranty as to the future perfor-

4. *See Tittle v. Steel City Oldsmobile GMC Truck, Inc.,* 544 So.2d 883 (Ala.1989); *Boyd v. A.O. Smith Harvestore Products, Inc.,* 776 P.2d 1125 (Colo.App.1989); *Flagg Energy Devel. v. General Motors,* 244 Conn. 126, 709 A.2d 1075 (1998); *Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261 (D.Del.1983) (construing Delaware law); *Voth v. Chrysler Motor Corporation,* 218 Kan. 644, 545 P.2d 371 (1976); *Cosman v. Ford Motor Co.,* 285 Ill.App.3d 250, 220 Ill.Dec. 790, 674 N.E.2d 61 (1996), *appeal denied,* 172 Ill.2d 549, 223 Ill.Dec. 194, 679 N.E.2d 379 (1997); *Centennial Ins. Co. v. General Elec. Co.,* 74 Mich.App. 169, 253 N.W.2d 696 (1977); *Anderson v. Crestliner, Inc.,* 564 N.W.2d 218 (Minn.App. 1997); *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818 (8th Cir.1983) (applying Missouri law); *Fire Dist. No. 9, Etc. v. American La France,* 176 N.J.Super. 566, 424 A.2d 441 (App.Div.1980); *Shapiro v. Long Island Lighting Co.,* 71 A.D.2d 671, 418 N.Y.S.2d 948 (1979); *Hull v. Moore's Mobile Homes Stebra, Inc.,* 214 A.D.2d 923, 625 N.Y.S.2d 710 (1995); *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106 (Tenn.App.1983); *U.S. Marine Corp. v. Kline,* 882 S.W.2d 597 (Tex.App. 1994); *Muss v. Mercedes-Benz of North America, Inc.,* 734 S.W.2d 155 (Tex.App.1987). *Compare Nationwide Insurance Co. v. General Motors Corp.,* 533 Pa. 423, 625 A.2d 1172 (1993), *and Executone Business Systems Corp. v. IPC Communications, Inc.,* 177 Mich.App. 660, 442 N.W.2d 755 (1989), *appeal denied,* 434 Mich. 879 (1990).

mance of the goods." Ronald Anderson, UNIFORM COMMERCIAL CODE, § 2–725:129 at 293 (3d ed.1994 rev.). The rationale for that view was given by the U.S. District Court for the District of Delaware in *Ontario Hydro v. Zallea Systems, Inc., supra,* 569 F.Supp. at 1266, and by the Colorado court in *Boyd v. A.O. Smith Harvestore Products, Inc., supra,* 776 P.2d at 1128. As the *Ontario Hydro* court explained:

"A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised. The U.C.C. provides the exception in § 2–275(2) because without it, a situation could arise where a buyer, after tender of delivery, could be awaiting such future performance only to have the four year limitation period expire and the future performance promised subsequently fail to occur, thereby leaving the buyer without legal recourse upon such an expressed warranty.

On the other hand, a repair or replacement warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair within a stated period.

Thus, the key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a *remedy* if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product itself for a stated period of time."
*Ontario Hydro* at 1266.[5]

The commitment to repair or replace *is* an enforceable undertaking, but it is not a warranty of future perfor-

---

5. The National Conference of Commissioners On Uniform State Laws—the body that drafted the U.C.C.—has attempted, in its latest draft of a revision of the U.C.C., to deal with any confusion arising from repair or replacement commitments. The most current (November, 2000) draft treats a promise by a seller to repair or replace goods or refund all or part of the purchase price upon the happening of a specified event as a "remedial promise," a newly defined term. *See* REVISION OF UNIFORM COMMERCIAL CODE ARTICLE 2—SALES (November 2000 Draft) § 2–102(35).

mance that falls within the exception stated in § 2–275(2). The repair and replacement commitment in this case required that the seller be given written notice of the defect within one year and ten days after the date of delivery. Obviously, that did not happen. The issue as to any failure to repair or replace, therefore, is not one of limitations, but of no breach. The seller was not asked, within the applicable period, to make any repairs or replacement, and thus it cannot be held to have violated that undertaking.

The question, then, is whether the warranty that the mobile home would be "free from substantial defects of material and workmanship under normal use and service for a period of twelve (12) months from the date of delivery to the first retail purchaser" constitutes, on its own, a warranty that explicitly extends to future performance and, if so, whether petitioners filed their action within the limitations period allowed by § 2–725(2).

This has been one of the more troublesome issues arising under § 2–725; the issue, indeed, pre-dated the Uniform Commercial Code and existed under the antecedent Uniform Sales Act. *See* Michael Schmitt and Kenneth Hanko, *For Whom the Bell Tolls—An Interpretation of the UCC's Exception as to Accrual of a Cause of Action for Future Performance Warranties*, 28 Ark. L.Rev. 311 (1974). Most of the cases and commentators note generally that the discovery rule exception provided in § 2–725(2) was intended to be a narrow one, strictly construed. *See* Anderson, UNIFORM COMMERCIAL CODE, *supra*, § 2–725:123; William D. Hawkland, UNIFORM COMMERCIAL CODE SERIES, § 2–725:2. To some extent, that view proceeds from the fact that the exception is just that, an

---

The Preliminary Comment to that subsection notes that some courts have held commitments by sellers to take remedial action as constituting warranties and that a few have "used strained reasoning that allowed them to apply the discovery rule even though the promise at issue referred to the future performance of the seller, not the goods." The proposed revision takes the position that a promise by a seller to take remedial action "is not a warranty at all and therefore is not subject to either the time-of-tender or discovery rule." That approach comports with the predominant view of the current law.

exception to what was intended to be a fixed, uniform limitations period, as well as from the manner in which it is phrased, that the warranty must "explicitly" extend to future performance. Thus, citing cases from five States, Anderson concludes that "[a] provision will not be interpreted as applying to future performance unless it very clearly does so" and that "[i]f there is any ambiguity it must be interpreted against the existence of such a warranty." Anderson, *supra*, § 2–725:123 at 285. Hawkland adds that the exception "seems limited to a single situation, namely, where the seller expressly gives a warranty for a period of time, such as guaranteeing a roof for 20 years." Hawkland, *supra*, § 2–725:2. *See also Sudenga Industries, Inc. v. Fulton Performance Products, Inc.*, 894 F.Supp. 1235, 1238–39 (N.D.Iowa 1995); *Roy v. Armco*, 636 F.Supp. 839, 840 (E.D.Tex.1986), *aff'd without opinion*, 818 F.2d 863 (5th Cir.1987).

■ There is no problem when the warranty simply states that the goods have a certain positive quality or are free from all or certain defects but states no time period during which the goods will continue to have that quality. That kind of warranty does not reference or extend to any future performance. If the goods do not have the warranted quality or are defective, the warranty is breached upon tender of delivery, and the buyer has four years from that date in which to file suit, even if the breach is not, in fact, discovered within that period. *See Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); *In Re Lone Star Industries, Inc.*, 776 F.Supp. 206 (D.Md.1991); *Sudenga Industries, Inc. v. Fulton Performance Products, Inc., supra*, 894 F.Supp. 1235; *Cent. Wash. Refrigeration, Inc. v. Barbee*, 81 Wash.App. 212, 913 P.2d 836 (1996), *rev'd on other grounds*, 133 Wash.2d 509, 946 P.2d 760 (1997); *In Re Dynaco Corp.*, 200 B.R. 750 (Bankr.D.N.H.1996); *compare Parzek v. New England Log Homes, Inc.*, 92 A.D.2d 954, 460 N.Y.S.2d 698 (1983).

■ The matter is equally clear at the other end of the spectrum—where the warranty is that the goods will perform in a certain manner for a certain period of time or until a certain date. In that situation, not only does the warranty clearly and explicitly extend to future performance, but, unless the breach somehow manifests itself earlier, the buyer will be unable to determine whether the warranty is breached until the time stated for the performance arrives or, if the warranty is a continuing one, expires. That kind of warranty will fall within the § 2–725(2) exception, and, upon the discovery of non-performance at the stated time, or at any point short of the stated time, the buyer will have four years from that date within which to file suit.

■ The problem arises where, as in this case, the warranty is that the goods will have a certain quality or be free from defects for a certain period of time. There is no explicit reference to a particular kind or level of performance, but the quality of the goods, which underlies an expected performance, is warranted for a certain period of time and, absent a sooner manifestation, the buyer will not know whether there has been a breach until that time has expired. A number of courts have treated that kind of warranty as extending to future performance and have therefore applied the discovery rule stated in § 2–725(2). *See, e.g., R.W. Murray Co. v. Shatterproof Glass Corp., supra,* 697 F.2d 818 (warranty that certain goods would be free from defects in material or workmanship for periods of ten and twenty years held to extend to future performance); *Salt Lake City Corp. v. Kasler Corp.,* 855 F.Supp. 1560 (D.Utah 1994).

We believe that to be the correct view, one that is in accord with the nature of an express warranty. Section 2–313(1)(a) of the Maryland U.C.C. provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." If the seller affirms that the goods will have a certain quality or be free from defects for a stated

period of time, that constitutes a warranty that the goods will conform to that affirmation and have that quality throughout the stated period, and thus explicitly extends to the future. Moreover, the quality of the goods, either by positive attribute or by negation of defects, necessarily relates to their performance. If the goods do not have the stated quality or develop a defect warranted against, they likely will not perform in the manner of goods that conform to the promise and thus in the manner that is reasonably anticipated by the parties. A warranty that goods will have a certain quality or be free from defects for a stated time thus, in our view, explicitly extends to future performance and is subject to the exception stated in § 2–725(2).

 That does not, however, assist petitioners in this case. The stated period of the warranty was one year from delivery. No representations were made with respect to defects discovered after the expiration of that period. We reject as unsound petitioners' notion that the discovery period allowed by § 2–725(2) is unlimited. That approach was implicitly rejected in *Standard Alliance Industries, Inc. v. Black Clawson Co., supra,* 587 F.2d at 821 (cause of action under exception in § 2–725(2) accrued when buyer discovered or should have discovered the defect "so long as the defect arose within the warranty period"), and for good reason. Statutes must be read reasonably, to conform to their purpose and not to create absurdities. It cannot have been the legislative expectation that, when a seller provides a warranty of future performance limited to a stated period, it remains subject to liability forever or for an indefinite time. Such a view is wholly inconsistent with the paramount intent expressed in the Official Comment to the section of providing certainty in the statute of limitations. Once the stated period expires, the warranty does as well, and, unless the breach was, or reasonably should have been, discovered sooner, any action based on the warranty must be brought within four years after that expiration. Petitioners in this case thus had a maximum of five years from delivery to file their action. They failed to do so, and, for that reason, the action was properly dismissed.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.