



FILED

Nov 12 2019, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-PL-37

## Kenworth of Indianapolis, Inc., et al.,
*Appellants (Defendants),*

–v–

## Seventy-Seven Limited, et al.,
*Appellees (Plaintiffs).*

Argued: February 14, 2019 | Decided: November 12, 2019

Interlocutory Appeal from Marion Superior Court,
No. 49D04-1010-PL-43362
The Honorable Cynthia Ayers, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 49A02-1710-PL-2502

**Opinion by Justice Goff**

Chief Justice Rush and Justices David and Massa concur.

Justice Slaughter concurs in Parts I and II and in the judgment.

## Goff, Justice.

This litigation arises from the sale of forty dump trucks—a transaction in goods governed by the Uniform Commercial Code (UCC). The agreement governing this sale contained a warranty and a one-year limitations period for filing a breach-of-contract suit. Mechanical problems plagued the trucks soon after delivery. Several years later, following sellers' unsuccessful attempts at repair, buyers sued for breach of warranty.

Under the UCC, a party's cause of action accrues (thus triggering the limitations period) upon delivery of goods. However, if a warranty explicitly guarantees the quality or performance standards of the goods for a specific future time period, the cause of action accrues when the aggrieved party discovers (or should have discovered) the breach. This is known as the future-performance exception.

As part of the larger issue of whether buyers' complaint was untimely, this case presents two novel issues for our consideration: (1) whether these parties' bargained-for warranty falls under the future-performance exception within Indiana's version of the UCC; and (2) whether the sellers' conduct—including their efforts at repairing the trucks—could toll the one-year limitations period under the doctrine of equitable estoppel.

We hold that, under the express terms of their agreement, the parties here contracted for a future-performance warranty and any breach-of-warranty claims did not accrue until the buyers knew (or should have known) of the breach. We also hold that, under the equitable estoppel doctrine, a party's conduct—even relating to the repair of goods—may toll a contractually agreed-upon limitations period when that conduct is of a sufficient affirmative character to prevent inquiry, elude investigation, or mislead the other party into inaction.

However, because there remain genuine issues of material fact relating to both issues, we hold that summary judgment is not appropriate now. We, therefore, affirm the trial court order denying summary judgment and remand for proceedings consistent with this opinion.

# Factual and Procedural History

Seventy-Seven Limited and six other trucking companies[1] (collectively, the **Buyers**) purchased forty customizable Kenworth T800 dump trucks manufactured by PACCAR and Kenworth Truck Company and sold by Kenworth of Indianapolis (collectively, the **Sellers**). For each truck sold, Buyers and Sellers executed a **Warranty Agreement** that provided, in relevant part, as follows:

> Kenworth Truck Company warrants directly to you that the Kenworth vehicle . . . will be free from defects in materials and workmanship during the time and mileage periods set forth in the Warranty Schedule and appearing under normal use and service.
>
> Your sole and exclusive remedy against Kenworth Truck Company and the selling Kenworth Dealer arising from your purchase and use of the vehicle is limited to the repair and replacement of defective materials or workmanship . . . to the extent of Kenworth Truck Company's obligations under the Warranty Schedule on the reverse side of this Agreement.

Ex. A; Appellants' App. Vol. III, pp. 13, 152–70. Sellers disclaimed all other warranties (express or implied) and liability for incidental or consequential damages. The Warranty Agreement imposed the following limitations period for filing a lawsuit:

> It is agreed that you have <u>one</u> year from the accrual of the cause of action to commence any legal action arising from the purchase or use of the vehicle, or be barred forever.

---

[1] Convey All, LLC; Keller Trucking, Inc.; K&K Aggregate, Inc.; Huber Transport, LLC; Triple H Trucking, LLC; Custom Hauling, Inc.

Ex. A.

In November 2005, Jeary Smith, of Seventy-Seven Limited, took delivery of the first truck. On his drive from Chillicothe, Ohio, to Greenfield, Indiana, he noticed the truck vibrating excessively. Smith reported the vibration immediately to Sellers, instructing them to remedy the problem before delivering the remaining trucks. Smith received assurances from Sellers that the vibration problem "would fall under warranty, it'll be fixed and it will all go away." Appellees' App. Vol. II, p. 118.

With these assurances, Buyers took delivery of the remaining trucks from late 2005 through 2006. But these trucks also vibrated excessively at idle and at certain RPMs. Buyers again reported the problem to Sellers. Unable to identify the source of the vibration, Sellers installed modified engine mounts as an alternative fix. But the problem returned in 2007. *See Kenworth of Indpls, Inc. v. Seventy-Seven Ltd.*, No. 49A02-1504-PL-249, 2016 WL 1158460 (Ind. Ct. App. Mar. 24, 2016). Sellers installed new, different engine mounts the following year, but, after a temporary reduction in vibration, the problem persisted. *Id.*

Having failed to resolve the issue to Buyers' satisfaction, Sellers agreed, in March 2008, to extend the base vehicle warranty to four years/250,000 miles. Sellers also promised to replace the engine mounts for as long as Buyers owned the trucks. Despite these attempts to cure, several Buyers returned the trucks and stopped making payments in late 2008.

By November of that year, Sellers, seeking to limit their liability exposure, debated whether to recall the trucks or to simply maintain the status quo. The latter option, according to one Kenworth employee, would "likely lead to litigation" because continually changing engine mounts would "probably not be acceptable to the customer." Appellees' App. Vol. III, pp. 39, 61. He was right.

In September 2010, Kenworth of Indianapolis (d/b/a ITC Acceptance Company) filed a replevin action against two Buyers based on their loan defaults. The following month—on October 4, 2010—Buyers filed this action, alleging breach of contract, constructive fraud, and rescission of

contract claims. Buyers later amended that complaint, adding claims of breach of express and implied warranties, estoppel, and non-conforming goods as defined under Indiana Code section 26-1-2-106. Buyers' second amended complaint invoked the UCC's provision allowing for suit when an exclusive, limited remedy fails its essential purpose. *See* Ind. Code § 26-1-2-719(2) (1995). The trial court eventually consolidated these actions into one case.

Sellers moved for summary judgment, contending that, because Buyers did not file their complaint until October 2010, their claims were time barred. "The causes of action for all of these trucks accrued upon tender of delivery" in late 2005 and early 2006, Sellers argued, "the same time when [Buyers] first discovered the excessive vibration." Appellees' App. Vol. II, pp. 7–8. Thus, Sellers insisted, the one-year limitation period specified in the Warranty Agreement ended in January 2007 "at the latest." *Id.* at 9.

Buyers responded by arguing that the cause of action accrued not upon delivery but when the four-year warranty period ends. What's more, they argued, the doctrine of equitable estoppel tolled the limitations period here.

In denying summary judgment, the trial court found that Sellers' "promise to work on a permanent fix to the excessive vibration problem throughout the modified warranty period" was an implied promise of future performance under the UCC. Appellants' App. Vol. II, p. 63. *See* I.C. § 26-1-2-725(2). Based on this finding, the court concluded that the cause of action accrued not on the date of delivery but on the date the extended warranty expired—that is, "four years from the date of in-service for each vehicle." Appellants' App. Vol. II, p. 64.

Beyond this conclusion, the trial court—finding "substantial reasons" to toll the limitations period—deemed Buyers' complaints timely. *Id.* at 64–65. In particular, the court cited Sellers' (1) extension and modification of the original warranty period, (2) promise to change the engine mounts as long as Buyers owned the trucks, (3) assurances of providing a permanent repair, (4) failure to include a limitations period in the modified warranty, and (5) continued assurances and failures to remedy the excessive vibration which prevented Buyers from filing suit.

Sellers appealed, arguing that Buyers' causes of action accrued upon delivery. What's more, they insisted, under *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691 (Ind. Ct. App. 1987), "Indiana law is clear that promises or attempts to repair defects do not toll the limitations period." Appellants' Br. at 29.

In a divided opinion, the Court of Appeals affirmed, with the majority rejecting Sellers' *Ludwig* argument. *Kenworth of Indpls. Inc. v. Seventy-Seven Ltd.*, 112 N.E.3d 1106, 1111–12 (Ind. Ct. App. 2018). We granted Sellers' petition to transfer, thus vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

# Standard of Review

This Court reviews summary judgments de novo, "applying the same standard as the trial court." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Under this well-settled standard, "summary judgment is proper if the designated evidence shows there is no genuine issue as to any fact material to a claim or issue, and the movant is entitled to judgment as a matter of law." *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018).

We likewise apply a de novo standard of review to issues of statutory construction, which encompasses the meaning and scope of the UCC.[2] *See State v. Reinhart*, 112 N.E.3d 705, 710 (Ind. 2018).

# Discussion and Decision

The parties pose the same two questions on transfer: (1) When did Buyers' causes of action accrue, thus triggering the one-year limitations period? And (2) did Sellers' conduct toll the limitations period once that limitations period commenced? In resolving this case, we must consider first whether the breach-of-warranty claim accrued on delivery or

---

[2] Indiana adopted and codified the UCC at Indiana Code chapter 26-1-2.

sometime afterwards. We then discuss whether the limitations period could be tolled once it began.

## I. These parties contracted for a one-year limitation period that started when a cause of action accrued.

By default, the UCC allows parties four years to bring a lawsuit once a cause of action arises from a sales contract. I.C. § 26-1-2-725(1). While the parties may not extend this limitations period beyond four years, they may reduce the period to one year. *Id.* It is undisputed that the Warranty Agreement amended the limitations period to one year. What's disputed is **when** Buyers' breach-of-warranty causes of actions accrued, thus triggering the limitations period.

The UCC instructs that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." I.C. § 26-1-2-725(2). Along the same lines, a cause of action for breach of warranty accrues "when tender of delivery is made," irrespective of whether the buyer knows of the breach. *Id.* This default delivery rule is subject to the future-performance exception. Under that exception, a cause of action for breach of warranty does **not** accrue on delivery if the "warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." *Id.* Instead, "the cause of action accrues when the breach is or should have been discovered." *Id.* In other words, if the express warranty guarantees the future performance of the goods, then the delivery rule changes to a discovery rule.

Here, the parties dispute whether the Warranty Agreement invoked the future-performance exception and its discovery-of-the-breach rule for determining when Buyers' breach-of-warranty claims accrued.

## II. Because these parties contracted for an express future-performance warranty under the UCC, Buyers' breach-of-warranty cause of action accrued when they discovered the breach.

Because the future-performance exception applies in only narrow circumstances, courts interpret and apply the exception strictly. *See Controlled Env'ts. Const., Inc. v. Key Indus. Refrigeration Co.*, 670 N.W.2d 771, 778–79 (Neb. 2003) (citing *Joswick v. Chesapeake Mobile Homes, Inc.*, 362 Md. 261, 765 A.2d 90 (2001)). For example, since the statute requires that a warranty must "**explicitly** extend[] to future performance of the goods," I.C. § 26-1-2-725(2) (emphasis added), most courts "have held that implied warranties by definition cannot explicitly extend to future performance," *Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir. 1981). *See also* 2 William D. Hawkland, Linda J. Rusch & Larry T. Garvin, Uniform Commercial Code Series § 2-725:2 ("Almost all courts find that implied warranties do not explicitly extend to future performance."); *id.* at n.16 (collecting cases from various jurisdictions). Consequently, courts will generally apply the future-performance exception to breach of **express** warranties only.

### A. The parties here bargained for an express warranty.

The UCC provides that when a seller makes "any affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain," then the seller "creates an express warranty that the goods shall conform to the affirmation or promise." I.C. § 26-1-2-313(1)(a). Similarly, when a seller provides "any description of the goods which is made part of the basis of the bargain," then the seller "creates an express warranty that the goods shall conform to the description." I.C. § 26-1-2-313(1)(b). Sellers need not "use formal words such as 'warrant' or 'guarantee'" or even "have specific intention to make a warranty." I.C. § 26-1-2-313(2).

Here, we find the Warranty Agreement contained a promise relating to the goods: "Kenworth Truck Company **warrants** directly to [Seller] that

the **Kenworth vehicle** . . . will be free from defects." And that promise became a basis of the parties' bargain. While unnecessary, Sellers even used formal language ("warrants") to evince their intent to create an express warranty.

Having found this Warranty Agreement contains an express warranty, we must now consider whether that warranty constitutes a future-performance warranty. For the reasons below, we conclude that it does.

## B. The UCC case law and commentary specify three requirements for a future-performance warranty.

Courts and commentators generally agree that, "in order to constitute a warranty of future performance under [UCC] section 725(2), the terms of the warranty must unambiguously indicate that the [seller] is warranting the future performance of the goods for a specific period of time." *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (6th Cir. 1983). *Accord Grand Island Exp. v. Timpte Indus., Inc.*, 28 F.3d 73, 75 (8th Cir. 1994) (finding a future-performance warranty in a contract specifying "that the trailers would be 'free from defects in materials and workmanship for a period of five years from the date-of-delivery to the First Purchaser'"); *Stumler*, 644 F.2d at 671 (stating that a future-performance warranty must "specifically" refer "to future time"); *Standard All. Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820–21 (6th Cir. 1978) ("If a seller expressly warrants a product for a specified number of years, it is clear that, by this action alone, he is explicitly warranting the future performance of the product or goods for that period of time."); *LTL Acres Ltd. P'ship v. Butler Mfg. Co.*, 136 A.3d 682, 687 (Del. 2016) ("The language of the warranty must be examined to determine if it explicitly, that is, plainly, warrants future performance."); *Controlled Env'ts Const. Inc.*, 670 N.W.2d at 779 (stating that courts will not infer a future-performance warranty from warranty terms that are not clear); *Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 66 (Ill. Ct. App. 1996) ("Illinois courts . . . require an explicit statement that the **goods**, not the **warrantor**, will perform in a certain way in the future."). *See generally* 2 Hawkland, Rusch & Garvin, Uniform Commercial Code Series § 2-725:2 n.19 (collecting cases).

Parsing through these authorities, we understand that a future-performance warranty is a seller's explicit promise or guarantee to a buyer that the goods will perform (or will be of certain quality) during a specific, future period of time.

### 1. A good's quality and performance go hand in hand.

A promise that the trucks "will be free from defects," Sellers insist, does not explicitly relate to the trucks' performance, but only their condition or quality. Oral Argument at 7:40–9:25. We disagree, and consider it imprudent, if not impossible, to separate the two because "the quality of the goods . . . underlies an expected performance." *See Joswick*, 765 A.2d at 96. *See also id.* 96–97 (observing that "the quality of the goods, either by positive attribute or by negation of defects, necessarily relates to their performance. If the goods do not have the stated quality or develop a defect warranted against, they likely will not perform in the manner of goods that conform to the promise"); *cf. Cosman*, 674 N.E.2d at 67 (rejecting a seller's promise to repair defects as a future-performance warranty because that promise does not "warrant the quality of the vehicle or its performance"). What's more, Sellers' warranty against future defects "under normal use and service" highlights the link between quality and performance.

### 2. A limited, exclusive repair-and-replacement remedy does not constitute a future-performance warranty under the UCC because it relates to a seller's performance.

Buyers, on the other hand, would have us conflate performance of goods and performance of Sellers. In other words, Buyers argue that the Sellers' promise to repair and replace a good covered by an express warranty is itself a future-performance warranty under the UCC. Otherwise, Buyers contend, the warranty would prove illusory. The trial court accepted this argument. *See* Appellants' App. Vol. II, p. 64 (tolling the statute of limitations based on, among other things, "the future

performance exception set out in [section] 725(2)"). But we reject the premise that Sellers' duty to repair and replace defective goods alone constitutes a future-performance warranty under the UCC. The promise must explicitly extend to the **goods'** performance, not the **sellers'** performance, for a specific future time period. *Cosman*, 674 N.E.2d at 66 (noting that Illinois courts have long "required an explicit statement that the **goods**, not the **warrantor**, will perform in a certain way in the future"). Sellers' obligations to repair and replace defective materials and workmanship are better understood as a limited remedy under the Warranty Agreement, not as a separate future-performance warranty and not as a separate promise.

### 3. Under Indiana's commercial law, an exclusive repair-and-replace remedy must give the parties the benefit of their bargain.

We are not unsympathetic, however, to Buyers' argument that their repair-and-replace remedy, if unenforceable, could be illusory. The UCC permits parties, as part of their arms-length bargain, to limit remedies available under a sales contract. I.C. § 26-1-2-719(1)(a) (permitting the agreement to "limit the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts"). What's more, the UCC allows parties to bargain for a limited remedy to serve as an exclusive remedy. I.C. § 26-1-2-719(1)(b) (instructing that "resort to a remedy is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy"). The UCC, however, will not leave aggrieved parties without recourse to enjoy and to enforce the benefit of their bargains. Indeed, when "circumstances cause an exclusive or limited remedy to fail of its essential purpose," a party may seek a remedy under other provisions of the UCC. I.C. § 26-1-2-719(2).

Indiana law disfavors "limitations of remedy" and so we strictly construe a contract's limiting provisions "against the seller on the basis of public policy." *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004) (citing *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d

1078, 1085 (Ind. 1993), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005)). Because the UCC gives parties freedom to shape their own remedies to suit their particular contract, Indiana courts will enforce reasonable agreements limiting or modifying remedies in a sales contract. Still, Indiana requires at least minimally adequate remedies to the contracting parties. I.C. Ann. § 26-1-2-719 UCC cmt. (West 2015) ("[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available.").[3]

## C. These parties bargained for a future-performance warranty.

Turning our attention back to the future-performance exception, we observe that a warranty must contain three components to qualify as a future-performance warranty: (1) it must be an explicit promise or guarantee, (2) it must concern the characteristics of the goods themselves, and (3) it must identify a specific future time period during which the goods will conform to that guarantee. These three components are present in this Warranty Agreement:

> Kenworth Truck Company **warrants** directly to you that the **Kenworth vehicle** identified below . . . **will be free from defects** in materials and workmanship **during the time and mileage**

---

[3] For example, if a seller limits a buyer's exclusive remedy to repair or replacement and then incompetently repairs or replaces the defective good (effectively resulting in a failure to perform), then the UCC gives the buyer a different remedy enforceable at law. *See* I.C. § 26-1-1-106(1) (providing that UCC "remedies . . . shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed"); I.C. § 26-1-1-106(2) ("Any right or obligation declared by I.C. 26-1 is enforceable by action unless the provision declaring it specifies a different and limited effect."). *See also Perry*, 814 N.E.2d at 643. Since a buyer in this example should be able to enjoy the benefit of a bargained-for remedy, we envision the buyer vindicating that right through a breach-of-contract cause of action that alleges the remedy failed its essential purpose. Such a cause of action would accrue when the breach occurred, that is, when the seller's repair and replacement remedy failed its essential purpose.

**periods set forth in the Warranty Schedule** and appearing under normal use and service.

Appellants' App. Vol. III, p. 13 (emphases added). A close analysis of this contractual language, along with the attached Warranty Schedule, reinforces our view that the Warranty Agreement contains the necessary criteria for a future-performance warranty. First, the phrase "Kenworth Truck Company warrants directly to you" clearly qualifies as an **explicit promise**. *See Warrant*, Webster's Third New Int'l Dictionary 2577–78 (2002) (defining the term as "something that serves as a pledge, guarantee, or insurance" or "to guarantee (as a fact or a statement of fact) to be at present or at a future time as represented" or "to guarantee (as goods sold) especially in respect to the quality or quantity specified"); *Warrant*, Black's Law Dictionary (10th ed. 2014) ("To guarantee the security of (realty or personalty, or a person)" or simply to "promise or guarantee"). While there are no magic words for creating a future-performance warranty, saying "warrants" in this context plainly connotes a promise or guarantee. Second, the promise relates to the **quality or performance standards of the goods** alone—the defect-free Kenworth truck. Third, the parties identified a **specific future time period** for performance by using future-tense language ("will be free from defects" for 12-months/100,000-miles),[4] rather than past-tense ("were free from defects") or present-tense language ("are free from defects").

We stress that every word and phrase matters in these future-performance warranties. Adding, omitting, or changing a single word potentially alters the warranty's meaning and breadth. Had Sellers not used future-tense language, for example, or had they omitted a specific

---

[4] Notably, other courts have recognized that similarly worded warranties constitute future-performance warranties under UCC section 2-725(2). *See, e.g.*, *Grand Island Exp.*, 28 F.3d at 74; *R.W. Murray Co.*, 697 F.2d at 821–24; *LTL Acres Ltd. P'ship*, 136 A.3d at 685, 687–88; *Joswick*, 765 A.2d at 96–97; *Grosse Pointe Law Firm, PC v. Jaguar Land Rover N. Am., LLC*, 894 N.W.2d 700, 703–04 (Mich. Ct. App. 2016) (citing *Executone Bus. Sys. Corp. v. IPC Commc'ns, Inc.*, 442 N.W.2d 755 (Mich. Ct. App. 1989)); *Wienberg v. Independence Lincoln-Mercury, Inc.*, 948 S.W.2d 685, 689–90 (Mo. Ct. App. 1997); *Controlled Env'ts. Const., Inc.*, 670 N.W.2d at 778–781.

future time period for the trucks' quality and performance, or had they promised only to repair and replace defects rather than warrant against future defects, then this warranty would fall outside the limited future-performance exception. But as written, this bargained-for warranty constitutes a future-performance warranty, and the courts must apply the discovery rule to determine when the breach-of-warranty cause of action accrued.

## III. Precisely when Buyers discovered or should have discovered the breach of warranty remains a genuine issue of material fact.

Determining when a breach-of-future-performance-warranty cause of action accrued using the discovery rule requires a court to discern when Buyers knew (or should have known) of the breach. Neither the UCC nor the Warranty Agreement define the term "breach." And without statutory or contractual guidelines for determining when a party knows or should have known of a breach, we turn to the common law.

Under Indiana's discovery rule, "a cause of action accrues when a party knows or in the exercise of ordinary diligence could discover, that the contract has been breached." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006). Since even the most basic contracts involve at least two parties, each with rights and obligations, it is essential, then, under Indiana law for the injured party to know who breached what obligation. *See generally Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995) (observing that in the tort context "Indiana's rule thus has two components—the discovery of the injury, as well as its cause.").

But knowing or discovering who breached what contractual obligation is not a demanding standard. Indeed, Indiana's discovery rule "does not require a smoking gun in order for the [period] of limitations to commence." *Perryman*, 846 N.E.2d at 689. Rather, a cause of action accrues and the limitations period begins, when the circumstances involving contractual rights and obligations "put a person of common knowledge and experience on notice that some right of his has been invaded or that

some claim against another party might exist." *Id.* (quoting *Mitchell v. Holler*, 429 S.E.2d 793, 795 (S.C. 1993)).

The parties here dispute when Buyers knew (or should have known) that a breach of warranty occurred. Sellers argue that Buyers "discovered the vibration problem almost simultaneously with the delivery of the trucks in late 2005 and early 2006." Appellants' Br. at 27. Buyers don't dispute that the trucks vibrated excessively soon after delivery. Rather, they contend they did not know (and should not have known) that the vibration amounted to a breaching defect because Sellers couldn't identify the cause of the problem and were still testing the trucks in 2008. Appellees' Br. at 7–10, 16–18, 24–26; Oral Argument at 29:30–30:30, 33:50–35:10.

Weighing these arguments, we must look to what the parties bargained for in the Warranty Agreement. This particular future-performance warranty explicitly excluded the truck's "engine, engine brake, automatic transmission, tires, wheels, and/or rims and fifth wheel," all of which were "warranted directly to [Seller] by their respective manufacturers." Appellants' App. Vol. III, p. 13. Given these exclusions and separate warranties, we cannot conclude as a matter of law that—by knowing the trucks vibrated excessively on or shortly after delivery—Buyers knew or should have known at that time who breached what warranty. What's more, Sellers fail to identify where precisely in the record Buyers knew or

should have known that the vibration resulted from parts of the trucks subject to this warranty.[5]

On the other hand, we cannot endorse Buyers' view that they could not have discovered this breach of warranty while Sellers were testing the trucks. Buyers needed no "smoking gun" to discover the breach; they needed only to realize that "some claim" against Buyers might have existed. *See Perryman*, 846 N.E.2d at 689.

Based on this particular future-performance warranty and the disputed facts before us, we conclude that the point at which Buyers discovered (or should have discovered) that Sellers breached the warranty represents a genuine issue of material fact precluding summary judgment.

## IV. Indiana law allows for tolling a limitations period once it begins.

Our conclusion on the breach-of-future-performance-warranty claim alone supports our decision to affirm the trial court's denial of summary judgment. However, we elect to address the tolling issue here because any subsequent determination that Buyers failed to discover Sellers' breach

---

[5] Sellers stated that Cummins, the truck engine manufacturer, tested the trucks in March and April 2006. Appellants' Br. at 15–16 (citing Appellants' App. Vol. III, p. 27). But that record citation provides no dates for testing. Notably, that citation also indicates that Sellers initially believed the engine caused the excessive vibration. Appellants' App. Vol. III, pp. 27, 34. Sellers' brief likewise says the decision was made in July 2006 to replace the mounts, but it provides no record citation for that fact. *See* Appellants' Br. at 16. Sellers then claim the engine mounts were replaced in September 2006. *Id.* (citing Appellants' App. Vol. III, p. 81). But that record citation—to an e-mail giving instructions on how to replace the engine mounts—did not establish when the engine mounts were replaced (or when Buyers learned of the breach). What's more, neither the e-mail nor Sellers' brief identifies the parties to the e-mail to show what Buyers knew. We echo the Court of Appeals' admonition to Sellers that their designation of two depositions (totaling over 400 pages) is "insufficiently specific for purposes of Indiana Trial Rule 56(C)." *Kenworth*, 112 N.E.3d at 1118 n.17. *See Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind. 2008) (noting that "the designation of an entire deposition is inadequate" to satisfy the requirements of Trial Rule 56(C), which compels parties to specifically "identify the 'parts' of any document upon which they rely").

within the limitations period may not be dispositive if Sellers' actions tolled the limitation period.

The UCC allows for tolling (or pausing) the limitations period once the claim has accrued. I.C. § 26-1-2-725(4). Though the UCC imposes uniform limitation periods, it does not intrude upon state laws governing when that limitations period may be tolled. I.C. Ann. § 26-1-2-725(4) UCC cmt. ("Subsection (4) makes it clear that this Article does not purport to alter or modify in any respect the law on tolling of the Statute of Limitations as it now prevails in the various jurisdictions."). Indiana law contemplates tolling a limitations period governing a sales contract, either by contractual agreement or by equity.

## A. Contracting parties may agree to toll a limitations period, but the parties here did not.

Indiana's commercial law "favor[s] the parties' freedom of contract" and "enable[es] contracting parties to control their own relationships." *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 950 (Ind. 2001). That freedom permits parties to curb the UCC's control over their agreements. I.C. § 26-1-1-102(3) (stating that the UCC's effect "may be varied by agreement" unless specified otherwise by the UCC); I.C. Ann. § 26-1-1-102(3) UCC cmt. 2 (acknowledging "that freedom of contract is a principle of the [UCC]"). As masters of their deal, parties may bargain for their respective contractual rights and obligations, and they may include in their contracts specific tolling limitations. *See generally Carlson v. Sweeney, Dabagia, Donohue, Thorne, Janes & Pagos*, 872 N.E.2d 626, 627 (Ind. Ct. App. 2007) (acknowledging that parties may enter into "pre-suit agreements tolling the statute of limitations").[6] The parties here, however, did not contract for a tolling agreement. *See* Appellants' App. Vol. III, p. 13; Oral Argument at 5:00–6:00, 16:00–17:40, 35:00–37:00.

---

[6] For example, parties could agree that the limitations period will stop running while a seller attempts to repair defective goods and resume when repairs are completed.

### B. Courts may toll a limitations period under the doctrine of equitable estoppel.

Indiana law allows for tolling a period of limitations under the doctrine of equitable estoppel. *See Perryman*, 846 N.E.2d at 690–91; *Ludwig*, 510 N.E.2d at 696–98. This doctrine provides that if a party's actions prevent another party from obtaining the requisite knowledge to pursue a claim, then "equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Perryman*, 846 N.E.2d at 690. Equitable estoppel is typically linked to claims of fraudulent concealment, but the doctrine also applies to other conduct that "lull[s] [a party] into inaction." *Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind. 1990). The *Paramo* Court, citing a long line of precedent, stated that, to establish equitable estoppel, a party's conduct "must be of a sufficient affirmative character to prevent inquiry **or** to elude investigation **or** to mislead and hinder." *Id.* at 599 (emphases added). As we discuss below, a party's efforts at repairing or replacing goods might toll a limitations period under the equitable estoppel doctrine, but whether a limitations period is tolled will depend on the circumstances of the case, not a bright-line rule.

### 1. *Ludwig v. Ford Motor Company* did not toll the statute of limitations based on that seller's repair efforts.

In *Ludwig*, our Court of Appeals rejected application of the estoppel doctrine to a seller's attempts to repair or replace defective goods, holding that such efforts "did not toll the statute of limitations." 510 N.E.2d at 699. In denying summary judgment here, the trial court distinguished *Ludwig*, citing factual differences between that case and this one. Appellants' App. Vol. II, p. 62. The *Ludwig* opinion then divided the Court of Appeals below, with the dissent deeming it controlling and the majority rebuffing it as non-binding horizontal authority that was wrongly decided. *Kenworth*, 112 N.E.3d at 1112, 1121. In weighing *Ludwig*'s value here, we look to the rationale supporting the decision in that case. We then assess how other courts have treated it through the years.

In deciding whether a seller's repair efforts could toll the statute of limitations, the *Ludwig* court first took a broad view, looking to how other jurisdictions settled the issue. Noting the split in authority, the court sided with those courts holding that a seller's promises or efforts to repair defective goods "do not toll the statute of limitations applicable to an action for breach of warranty." 510 N.E.2d at 698. Like those other courts, the *Ludwig* court based that conclusion in part on its reluctance to "read into statutes of limitations an exception which has not been embodied therein." *Id.* at 699. The court found persuasive the fact that, by adopting the UCC, Indiana's General Assembly provided a four-year statute of limitations for a sales contract and the court did not want to allow simple performance under the contract to extend that statutory period. *Id.*

The *Ludwig* court then took a narrow view of the tolling issue, focusing its attention on the specific facts before it. The court observed that the parties "provided explicit, written warranties" that outlined the seller's obligations to repair and replace defective or malfunctioning parts for two years. *Id.* The court also noted the parties were aware of their rights and obligations under the warranties when the trucks were delivered. *Id.* And in observing that the sellers completed the repairs "more than 39 months before [the buyer] filed suit," the court concluded that those repairs could not have "lulled him into inaction and delayed his filing of this suit." *Id.* "Given the facts of th[at] case," the *Ludwig* court refused to alter the parties' bargained-for warranty to extend the seller's obligations. *Id.* Accordingly, the court held that "[t]he efforts to repair the engines did not toll the statute of limitations." *Id.*

### 2. Although still good law, *Ludwig* has limited reach since it was tailored to the facts of that case.

Though thirty years removed from *Ludwig*, we think the Court of Appeals rightly decided that case. Indeed, we are loath to read into a contract something that would subvert both the parties' and the legislature's expressed intentions for their bargain. *See WellPoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 N.E.3d 716, 724 (Ind. 2015). By repairing or replacing defective truck engines within the warranty period,

*Ludwig*'s sellers were merely fulfilling their bargained-for contractual obligations. Absent evidence of fraud or conduct intended to mislead or lull a party to inaction, it would have been inequitable to toll the limitations period and thereby lengthen the time exposing the seller to legal action for work it was contractually required to perform.

But while we approve of *Ludwig*'s resolution for those parties, we decline Sellers' invitation to adopt *Ludwig*'s holding as a broad rule. *Ludwig* did not speak in comprehensive terms. Rather, the opinion in that case couched its conclusion in qualifying phrases like "under the present circumstances" and "given the facts of this case." 510 N.E.2d at 699. Based on this language, it does not appear that the *Ludwig* court intended its rule to cast a long, enveloping shadow. In support of this conclusion, we find no subsequent Indiana cases (and Sellers point us to none) citing *Ludwig* for the proposition that repair efforts do not toll the limitations period for breach of warranty claims.[7]

Balancing these *Ludwig* perspectives, we still see it as good law, only limited in scope to the facts of that case. Indeed, for our purposes here, *Ludwig*'s value lies in its instruction that decisions about whether repair efforts can provide equitable reasons for tolling depend on the particular facts and circumstances in each case. Given the equitable estoppel doctrine's malleable contours, coupled with *Ludwig*'s limited reach, we recognize that when a seller's repair actions fall outside the bounds of the original contract (or are fraudulent), that conduct **could be** of "sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder," thereby lulling a buyer into inaction and tolling the limitations period. *See Paramo*, 563 N.E.2d at 599. But like any other decision invoking the equitable estoppel doctrine, deciding whether to toll a limitations period based on a seller's promises or efforts to repair defective goods will depend on the facts and circumstances of that case.

---

[7] The cases cited by Seller agree with *Ludwig* that a breach-of-warranty cause of action accrues at delivery but do not hold that repair efforts toll the limitations period. *See* Pet. to Trans. at 14; Appellants' Br. at 23–24.

### 3. *Ludwig* is distinguishable from this case and does not control.

Sellers liken their case to *Ludwig*, urging us to apply it here by concluding, as a matter of law, that their repair efforts could not toll the limitations period. We disagree and find several distinguishing facts that diminish *Ludwig*'s precedential pull here.

Unlike in this case, the *Ludwig* warranty did not warrant against defects but served only as a remedial measure if defects arose. 510 N.E.2d at 694 ("[Seller] warrants to the owner that it will repair any defective or malfunctioning parts of each . . . engine . . . in accordance with the following schedule."). In other words, those sellers did not guarantee that the truck engines would be defect-free; rather, they promised to repair or replace any defective or malfunctioning part. By guaranteeing **their** performance, and not the **goods'** performance, those sellers put their conduct as the warranty's centerpiece.

*Ludwig* further differs from this case in that, while those trucks were defective "[f]rom the start," there is no indication that those buyers relied on the seller's promises to repair the trucks before accepting them. *Id.* at 693. Here, by contrast, Jeary Smith testified that, after noticing the excessive vibration in one truck, he informed Sellers that Buyers would not take delivery of the remaining trucks. According to Smith, only when Sellers assured him that they would fix the vibration did he agree to accept the trucks.

Moreover, unlike the *Ludwig* sellers, Sellers here extended the warranty period, continued repairing the trucks past their original contractual obligations, and even promised to continue repairing the trucks as long as Buyers owned them. Sellers characterize this as a "goodwill warranty," Appellants' Br. at 33, but there is designated evidence suggesting that they chose this route to buy time in the trade cycle and to limit their financial exposure. Appellees' App. Vol. III, pp. 37–38, 38. No matter Sellers' motives for modifying their contractual obligations, the fact that they did modify their obligations (as the trial court noted) removes this case beyond *Ludwig*'s orbit. The *Ludwig* parties always knew their rights and

obligations under the warranty. On this record, we're not prepared to say the same of the parties here.

Recall, the trial court found "substantial reasons to toll the statute of limitations in this case." Appellants' App. Vol. II, p. 64. While we need not agree with all these reasons, we can affirm the trial court's order denying summary judgment on any basis sustainable in the record. *See Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006–07 (Ind. 2015). Since we find this case distinguishable from *Ludwig*, we cannot say, on this record, that Sellers' repair efforts did not toll the statute of limitations as a matter of law. In the end, whether Sellers' conduct—related or unrelated to repair efforts—tolled the limitations period under the equitable estoppel doctrine depends on factual issues best left to the trial court.

## Conclusion

For these reasons, we affirm the trial court's order denying summary judgment and remand for proceedings consistent with this opinion.

Rush, C.J., and David and Massa, JJ., concur.
Slaughter, J., concurs in Parts I and II and in the judgment.

ATTORNEYS FOR APPELLANTS
David T. Schaefer
Anthony M. Zelli
Dinsmore & Shohl LLP
Louisville, KY

David J. Jurkiewicz
Bose McKinney & Evans LLP
Indianapolis, IN

ATTORNEYS FOR APPELLEES
Scott A. Benkie
Benkie & Crawford
Indianapolis, IN

Rodney V. Taylor
Hilary A. Barnes
Christopher & Taylor
Indianapolis, IN